**Ex Parte Lucian Lee SPANN, Applicant.**

**No. 74722.**

Court of Criminal Appeals of Texas.

April 21, 2004.

Lucian Lee Spann Jr., Pro Se.

Katherine AA. Drew, Assistant District Attorney, Dallas, Matthew Paul, State's Attorney, Austin, for State.

### OPINION

MEYERS, J., delivered the opinion of the Court, in which PRICE, WOMACK, JOHNSON, HOLCOMB, and COCHRAN, J.J., joined.

Applicant was convicted on a plea of guilty for the offense of Theft of Property of $750.00 or less, and was sentenced to a 15–year term in prison on July 23, 1991. He was released on parole or mandatory supervision on July 8, 1996 ("RELEASE date"), with an expiration date of May 25, 2006 (just under 10 years).[1] A parole-violator warrant was issued on October 20, 1998, but was subsequently withdrawn on February 5, 1999. Applicant was returned

---

1. We note that the record is unclear, making it difficult to determine exact dates of incidents and certain actions taken pertaining to Applicant's record.

to custody at the Texas Department of Correctional Justice ("TDCJ") on March 25, 1999, and re-released on January 26, 2000. This detention was for a new conviction, however, and Applicant's parole was not revoked. On April 19, 2000, another parole-violator warrant was issued, but the warrant was later withdrawn on June 22, 2000. Applicant was again returned to the TDCJ on August 3, 2000, and re-released on January 18, 2001, but Applicant's mandatory supervision for this cause was not revoked. On August 6, 2001 ("SUMMONS date"), a summons relating to this cause was issued. Then, on September 4, 2001 ("WARRANT/REVOCATION date"), a parole-violator warrant was issued for this cause, and Applicant's mandatory supervision was revoked on the same date. Applicant applied for street-time credit,[2] but was denied such credit by the TDCJ street-time credit office on June 18, 2002, "due to not meeting the mid-point."[3] Applicant then filed this application on August 23, 2002.

Applicant correctly asserts that Texas Government Code 508.283(c) applies to his situation. TEX. GOV'T CODE ANN. § 508.283(c) (Vernon 2004). He has no prior or current convictions which would place him under 508.149(a),[4] and section 508.283(c) applies to "any revocation that occurs on or after September 1, 2001." TEX. GOV'T CODE ANN. § 508.283 (Vernon 2004); see also Parker v. Cockrell, 2002 WL 1996553, *2–3 (N.D.Tex. Aug. 7, 2002). Section 508.283(c) reads:

If the parole [or] mandatory supervision . . . of a person other than a person described by Section 508.149(a) is revoked, the person may be required to serve the remaining portion of the sentence on which the person was released. For a person who on the date of the issuance of a warrant or summons initiating the revocation process is subject to a sentence the remaining portion of which is greater than the amount of time from the date of the person's release to the date of issuance of the warrant or summons, the remaining portion is to be served without credit for the time from the date of the person's release to the date of revocation. For a person who on the date of issuance of the warrant or summons is subject to a sentence the remaining portion of which is less than the amount of time from the date of the person's release to the date of issuance of the warrant or summons, the remaining portion is to be served without credit for an amount of time equal to the remaining portion of the sentence on the date of the issuance of the warrant or citation.

Basically, section 508.283(c) says that certain parole violators will receive street-time credit if the "remaining portion" of their sentence is less than the amount of time they have spent out on parole. Although section 508.283(c) is worded in such a confusing manner, it can be simplified into the following 2–pronged test for the purpose of determining whether Applicant receives street-time credit:[5]

2. Street-time credit refers to calendar time a person receives towards his sentence for days spent on parole or mandatory supervision.

3. From the supporting affidavits in the record, it is unclear what date the TDCJ office considered to be the "mid-point," as well as how the office came to the conclusion that Applicant had not met such mid-point.

4. Persons described under Section 508.149(a) of the Texas Government Code include those guilty of certain violent offenses. TEX. GOV'T CODE ANN. § 508.149(a) (Vernon 2002).

5. This test is merely to simplify the language of the statute for easier comprehension. It is not to be used as the sole test for determining the effect of 508.283(c) as a whole.

1. If, *on* the SUMMONS[6] date, the **"remaining portion"** of Applicant's sentence is **greater than** the **time spent on parole,** Applicant receives **no street-time credit** for the time spent on parole. 2. If, however, on the SUMMONS date, the **"remaining portion"** of Applicant's sentence is **less than** the **time spent on parole,** Applicant receives street-time **credit** for the amount of time spent on parole.

But the equation cannot be said to be that simple without asking a crucial question: For purposes of determining street-time credit (whether the "remaining portion" of the sentence is greater than the time spent on parole), what does "remaining portion" in 508.283(c) mean? Does "remaining portion" mean merely that part of the sentence which is remaining as of the RELEASE date (without considering the amount of time spent out on parole), or does it mean that part of the sentence remaining at the RELEASE date *less the time spent on parole?* The difference in these two possible interpretations is more thoroughly examined below.

## Legislative History

▮ When interpreting a statute, this Court focuses "on the literal text of the statute in question and attempt[s] to discern the fair, objective meaning of that text at the time of its enactment." *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim. App.1991). To assist with statutory interpretation, the legislature has provided Texas Government Code Section 311 (the "Code Construction Act"), which states, "it is presumed that ... the entire statute is intended to be effective." TEX. GOV'T CODE ANN. § 311.021 (Vernon 2004). In addition, a court may consider "legislative history" and the "object sought to be attained" even when an ambiguity does not exist. *Id.* at section 311.023. However, despite the broad latitude afforded by the legislature, this Court considers "extratextual factors" such as legislative history only when the plain language of the statute is "ambiguous" or when a literal interpretation would lead to "absurd results." *Boykin*, 818 S.W.2d at 785. Because "remaining portion" is subject to two interpretations, section 508.283(c) is ambiguous, and we therefore turn to legislative history to help determine the intended meaning of the statute.

Prior to 2001, section 508.283 prescribed that *any* parole violator forfeited the benefit of street-time credit.[7] *See* Act of July 1, 1999, 76th Leg., R.S., ch. 62, 1999 Tex. Gen. Laws 62 (amended 2001) (current version at TEX. GOV'T CODE ANN. § 508.283(c) (Vernon 2004)). But in 2001, section 508.283 was amended, adding substantive changes to the statute. Act of May 08, 2001, 77th Leg., R.S., ch. 1197, 2001 Tex. Gen. Laws 856. The goal of the amendment was to lessen the sentence of non-violent parole violators (versus violent parole violators) whose time spent out on

---

6. Note that the SUMMONS date is used for computing the time spent on parole, rather than the WARRANT date, because *section 508.283(c) says "on the date of the issuance of a warrant or summons initiating the revocation process ...."* TEX. GOV'T CODE ANN. § 508.283(c) (Vernon 2002) (emphasis added). The summons, requesting Applicant to appear for a pre-revocation hearing and thus *starting the revocation process,* was issued August 6, 2001. The warrant was not issued until September 4, 2001.

7. Before the 2001 amendments, section 508.283(c) merely stated: "If a person's parole ... [or] mandatory supervision ... is revoked, the person may be required to serve the remaining portion of the sentence on which the person was released. The remaining portion is computed without credit for the time from the [RELEASE date] to the [REVOCATION date]." *See* Act of July 1, 1999, 76th Leg., R.S., 1999 Tex. Gen. Laws 62.

parole exceeded their remaining sentence. *Hearing on Tex. H.B. 1585 Before the House Comm. on Corrections,* 77th Leg., R.S. (Mar. 6, 2001) (statements of Representative Gallego and Victor Rodriguez) (audio at *www.house.state.tx.us/commitees/audio77/200.htm,* begins at 1:17:15).[8] The amended statute specifically states that certain *violent* offenders (persons under 508.149(a)) forfeit street-time credit if their parole is revoked. It articulates that if the parole or mandatory supervision *"of a person described by Section 508.149(a)"* is revoked, then the person does not receive credit for any time out on parole. TEX. GOV'T CODE ANN. § 508.283(b) (Vernon 2004) (emphasis added). Before the amendment, that section had not specified any particular class of persons, but had applied to all parole violators uniformly. *Id.* Additionally, the amended section 508.283(c) provides that, under certain circumstances, some persons (those *not* falling under provisions of 508.149(a)) retain street-time credit after their parole or mandatory supervision is revoked. *Id.* Clearly, adding such language was for the purpose of distinguishing and benefitting certain offenders who had completed more than half of their remaining sentence on parole; otherwise, there would have been no reason to change the statute from the original construction.

One can easily see the illogical impact the first possible interpretation of "remaining portion" would have on the effectiveness of section 508.283(c). For example, if "remaining portion" was meant to refer only to the portion of the sentence remaining on the RELEASE date, without credit for time spent on parole, then only in the event that the time spent on parole was equal to or greater than the remaining sentence on the RELEASE date would Applicant receive any street-time credit. Such an outcome simply does not make sense. In Applicant's situation, he had 10 years of a 15–year sentence remaining on his RELEASE date. He spent over 5 years out on parole. But, in order for him to receive street-time credit for that 5–year period, Applicant would have to complete the *entire* parole time of almost 10 years (because the remaining portion of the sentence on the RELEASE date—just less than 10 years—would be greater than any parole period less than that full amount). Applicant would thus have to serve almost 10 more years to finish out his sentence. Such an interpretation would render section 508.283(c) meaningless because it would only credit time where the remaining sentence had already been completed. In fact, under such an interpretation, the amended 508.283(c) would essentially have the same effect as the former section 508.283, and 508.283(c) would thus be superfluous.

On the other hand, if the "remaining portion" is that portion of the sentence remaining on the RELEASE date *less time spent on parole,* Applicant would have a "remaining portion" of a little over 4½ years (approximately 10 years at the RELEASE date less 5–plus years on parole). Because Applicant's time on parole would be greater than roughly 4½ years remaining of the sentence, Applicant would serve the "remaining portion ... without credit for ... the remaining portion of the sentence at the [WARRANT date]." TEX. GOV'T CODE ANN. § 508.283(c) (Vernon 2004). This means Applicant would get

**8.** HB 1585 was subsequently vetoed by the Governor on June 17, 2001. However, the *exact* same language is included in HB 1649, which became effective September 1, 2001.

Thus, the policies and arguments made at the HB 1585 hearings can equally be applied to the identical portions of HB 1649.

street-time credit for the time on parole up to the WARRANT date.

Comments made at a public hearing by State Representative Gallego and by the former chairman of the Texas Board of Pardons and Paroles, Victor Rodriguez, help illustrate that the equation to determine the "remaining portion," for purposes of 508.283(c), should be the sentence remaining as of the RELEASE date *less time spent on parole*. At the hearing, Rodriguez pointed out that if the remaining portion of the sentence is greater than the amount of time a person has been out of jail, then section 508.283(c) has "no effect." *Hearing on Tex. H.B. 1585 Before the House Comm. on Corrections*, 77th Leg., R.S. (Mar. 6, 2001) (at 1:28:30) (comments of Victor Rodriguez). Such a comment reinforces the option of subtracting parole time from the RELEASE date because it illustrates that section 508.283 actually has the same effect as the former 508.283 (forbidding *any* street-time credit after parole revocation) unless an applicant's remaining sentence is less than the amount of time spent on parole. The following example, similar to one given by Representative Gallego at the same hearing, further clarifies the impact of the amendment to section 508.283:

> Assume a non-violent offender who is sentenced to a 10–year term in 1990, who serves 4 years in TDCJ, and who is released on parole in 1994. At this point, the remaining sentence is 6 years. After 5 years on parole, the offender has his parole revoked. Under the old law, the offender would be required to serve the entire 6–year sentence, making his total commitment 15 years (4 in prison, 5 out, and 6 more in prison). Under H.B. 1585, because the offender was non-violent, and because at the date of revocation the remaining portion of his sentence (6 years at release less 5 years on parole = 1 year) was less than the

time served on parole (5 years), the offender would get credit for his time on parole. His total remaining sentence would be 1 year.

*Id.* at 1:18:15 (comments of Representative Gallego). This example gives a clear understanding that the legislature intended "remaining portion" to be the RELEASE date less time spent on parole.

**Case Law**

█ Few cases deal specifically with section 508.283(c). In *Ross v. Cockrell*, 2002 WL 31415979 (N.D.Tex. September 30, 2002), the petitioner filed for a writ of habeas corpus after his parole was revoked and he was refused street-time credit towards his remaining sentence. *Id.* at * 1. The petitioner, who was not a person under section 508.149(a), was released on parole for the remaining 11 years out of a 15–year sentence. After spending "766 days on parole," the petitioner had his parole revoked. *Id.* First, the court noted that, like Applicant, because the petitioner was not a person under section 508.149(a), and because the parole was revoked after September 1, 2002, "section 508.283(c) [controlled] whether he [was] entitled to credit." *Id.* In rendering its decision, the court reasoned that section 508.283(c) did not afford the petitioner street-time credit because the "[p]etitioner's remaining sentence of 11 years [was] greater than the 766 days he spent on parole." *Id.* Though the facts in *Ross* did not afford the petitioner street-time credit under *any* interpretation of "remaining portion," the court apparently interpreted "remaining portion" to mean the portion remaining at the petitioner's RELEASE date, without taking into account time spent on parole. It is true that the court first appears to calculate the "remaining portion" as of the RELEASE date *less time spent on parole* by stating that *"[w]hen TDCJ began the*

*process of revoking his parole,* Petitioner had more than eleven [sic] years remaining on his 15–year sentence. . . ." *Id.* (emphasis added). Using the date when the revocation process began would impliedly mean that the court figured the remaining portion by taking the RELEASE date and subtracting the time spent on parole up until the revocation process commenced. But the petitioner had a 15–year sentence, spent 3½ years in jail, then spent 2 years and 36 days on parole. If the court had indeed used the RELEASE date less time spent on parole, the petitioner would only have had a remaining sentence of 9 years and 5 months.[9] The only way for the Petitioner to have had "more than eleven years remaining on his 15–year sentence" would be for the court to have calculated the "remaining portion" as of the RELEASE date, without regard to time spent out on parole. This Court is not bound by the *Ross* decision, and to the extent that decision conflicts with what we construe as an accurate interpretation of the statute, we decline to follow. The proper interpretation of "remaining portion" is the remaining portion of the sentence on the RELEASE date, less time spent on parole.

**Conclusion**

After a careful analysis, we have determined that, of the two possible interpretations of "remaining portion" in section 508.283(c), only one interpretation will render the statute effective and consistent with legislative intent. "Remaining portion"in section 508.283(c) refers to that

part of the sentence remaining at the RELEASE date, less time spent on parole.

■ Relief is granted. The Texas Department of Criminal Justice time credit office is hereby ordered to award Applicant street-time credit equal to the time he spent out on parole for this cause.

Copies of this opinion shall be sent to the Texas Department of Criminal Justice time credit office, so that Applicant's street-time credit may be calculated in accordance with our holding.

KEASLER, J., concurred in the judgment.

KELLER, P.J., filed a dissenting opinion, in which HERVEY, J., joined.

KELLER, P.J., filed a dissenting opinion in which HERVEY, J., joined.

I agree with much of the Court's reasoning but must disagree with the amount of time credit granted. The Court orders that applicant be awarded "street-time credit equal to the time he spent out on parole for this cause." As I will explain below, applicant is entitled to credit for some of his street time, but not for all of it.

**A. Principles of statutory construction**

When interpreting a statute, we employ the familiar *Boykin* standard.[1] In short, we give effect to the plain meaning of the statutory text when possible, and make use of extratextual factors only when we must.[2] I turn to the statute before us.

---

9. The remaining sentence would have been 11 years at the RELEASE date, less 2 years and 1 month on parole, for a remaining sentence of about 9 years and 5 months.

1. *Boykin v. State,* 818 S.W.2d 782 (Tex.Crim. App.1991).

2. A plain meaning analysis includes construing words in accordance with any technical or particular meaning acquired by legislative definition or otherwise, TEX. GOV'T CODE § 311.011(B), and giving effect to all the language in the text if reasonably possible. *Campbell v. State,* 49 S.W.3d 874, 876 (Tex. Crim.App.2001).

## B. The statute

The statute provides in relevant part:

(b) If the parole, mandatory supervision, or conditional pardon of a person described by Section 508.149(a) is revoked, the person may be required to serve the *remaining portion* of the sentence on which the person was released. The *remaining portion* is computed *without credit* for the time from the date of the person's release to the date of revocation.

(c) If the parole, mandatory supervision, or conditional pardon of a person other than a person describe by Section 508.149(a) is revoked, the person may be required to serve the *remaining portion* of the sentence on which the person was released. For a person who on the date of issuance of a warrant or summons initiating the revocation process is subject to a sentence the **remaining portion** of which is greater than the amount of time from the date of the person's release to the date of issuance of the warrant or summons, the *remaining portion* is to be served *without credit* for the time from the date of the person's release to the date of revocation. For a person who on the date of issuance of the warrant or summons is subject to a sentence the **remaining portion** of which is less than the amount of time from the date of the person's release to the date of issuance of the warrant or summons, the *remaining portion* is to be served *without credit* for an amount of time equal to the **remaining portion** of the sentence on the date of issuance of the warrant or citation.[3]

Some observations about the statute are in order. First, there are three classes of people described in these subsections: (1) an "aggravated" offender (one who is described by § 508.149(a)); (2) a "non-aggravated" offender who has *more* time left on his sentence than he has served on the street; and (3) a non-aggravated offender who has *less* time left on his sentence than he has served on the street. Second, for street-time-credit purposes, the statute appears to treat the first two classes the same, while the third class is treated differently. Third, the statute appears to treat the third class more leniently than the first two; that is, the statute affords to the third class of persons time credit that is not available to the first two classes. Fourth, the statute contains parallel language used in conjunction with all three classes of people. Specifically, the phrases "remaining portion" and "without credit" are used with all three classes in a parallel fashion. Any interpretation of the statute should take into account all four of these observations, especially the parallel language, which is the crux of the present statutory construction problem.

## C. "remaining portion"

As the Court correctly observes, construing the phrase "remaining portion" to mean "remaining portion at the time of release" would render much of the statute meaningless because no one would ever receive time credit under subsection (c). The Court therefore interprets "remaining portion" uniformly to refer to the portion of the sentence remaining on the date the parole revocation warrant or summons issued. I believe, however, that the phrase refers to different things when it is employed in different parts of the statute. I have indicated my understanding above, with the italicized "remaining portion" phrases referring to the portion of the

---

3. TEX. GOV'T CODE § 508.283(b), (c)(italics and bold-face type added). I shall explain below the reason for the italics and bold-face.

sentence remaining on the date of release (the "big remainder") and the bolded "remaining portion" phrases referring to the portion of the sentence remaining on the date the warrant or summons issued (the leftover bit). I will not, at this juncture, address my reasons for this understanding, because the issues in this case are complicated enough, and there is a more important issue I wish to focus upon.

### D. "without credit"

The meaning of the phrase "without credit" is critical to assessing the amount of time credit due under § 508.283, but the Court does not say what the phrase should mean. The fact that the Court awards all time spent on the street means that the phrase "without credit" is being applied to something other than street time. If an inmate gets credit for time served in prison (which he does), and for all street time (which he does, according to the Court), the only time period left to which "without credit" can apply is the time remaining after the warrant issues (the leftover bit). In other words, the Court holds that all time is credited except time covered by the "without credit" phrase. While I believe the statutory language clearly suggests a different interpretation, rendering resort to extratextual sources of construction unnecessary, my interpretation is also in accord with extratextual factors.

### 1. *Plain meaning*

The Court's interpretation does not take into account the specialized meaning that time credits have in the legal system and the specialized meaning attaching to a legislative directive to deprive a person of time credits. When the Legislature permits the giving of calendar time credit, that credit is always for time served in some capacity.[4] And when the Legislature permits or requires denial of calendar time credit, that denied time credit relates to time already served by the defendant. Aside from the statute at issue here, two statutory provisions involve legislative permission for denying calendar time credits: 1) confinement served as a condition of community supervision, which is never credited,[5] and 2) confinement in the county jail pending revocation of a state jail felony probation, which can be credited or denied credit in the trial court's discretion.[6] I am not aware of any statute in which the Legislature speaks of denying calendar time credits for time that was never served in any capacity, but the Court's construction of the statute here implies that the Legislature has done so for cases in which § 508.283(c) applies.

But I believe that § 508.283(c) conforms to legislative custom regarding the denial of calendar time credits. Standing alone, the wording concerning the third class of offenders may be confusing. But the legislative usage becomes clear upon examining the language relating to the first two classes. For those classes, the remaining portion of the sentence is computed or

---

4. *See* TEX. CODE CRIM. PROC., Art. 15.18(a)(2)(credit for time served), 42.01 § 1(18)(same), 42.03 § 2(a)(credit for time "spent in jail in said cause"), 42.03 § 3 (credit for time spent in jail pending appeal), 42.031 § 3(b)(credit for time spent on work release), 42.09 §§ 1 & 7 (credits earned under Article 42.03 applied to sentence), 42.12 § 15(h)(2) & (3)(credit for time spent in county or state jail pending revocation)

5. TEX. CODE CRIM. PROC., Art. 42.03 § 2(a).

6. TEX. CODE CRIM. PROC., Art. 42.12 § 15(h)(2). But the Equal Protection Clause of the Fourteenth Amendment requires that the time be credited where the offender "was unable to post bond due to his indigence and ... was sentenced to the maximum sentence." *Ex Parte Harris*, 946 S.W.2d 79, 80 (Tex.Crim.App.1997).

served "without credit for the time from the date of release *to* the date of revocation" (i.e., without credit for street time).[7] The provisions say nothing about the time *after* revocation. Does that mean the offender gets credit for the time remaining after revocation, even though that time has not been served in any shape, form, or fashion? Of course not. The Legislature does not have to affirmatively deny credit for time that has never been served in any capacity. It is only when time has been served in some manner that the Legislature is called upon to specifically allow or disallow credit for that time. So, for the first two classes, the Legislature has disallowed credit for the time from the date of release to the date of revocation—time that is served on the street under supervision. The time *after* revocation, that has yet to be served, is not specifically referred to because there is no need to take any action to prevent that time from being credited. Just as the statute does not address time served under incarceration, the statute does not address time not yet served.

To illustrate how this works, consider the following hypothetical: a convicted person is sentenced to eleven years in prison, gets paroled after four years, and is revoked three years later. The following chart (Chart 1), depicts the sequence of events and how the time credits are calculated for each event:

Chart 1
Class 1 and 2 offenders
How the time credit statute works under the statutory language

| | release | revocation | |
|---|---|---|---|
| 4 yrs<br>prison time | 3 yrs<br>street time | 4 yrs<br>time not yet served | |
| credited | not credited | not credited | |
| (because it was<br>served) | ("without credit"<br>language,<br>508.283(b), (c)) | (because it is<br>not yet served) | |

According to the statute, the defendant in this hypothetical has seven years time remaining at the time of revocation. He gets credit for the four years that he actually served, but he does not get credit for the three-year time period occurring between release and revocation because the time credit statute says so, and he does not get credit for four-year time period after revocation because he has not yet served it.

Treating the statutory language consistently requires the same interpretation for the parallel "without credit" language relating to the third class of offenders. In other words, the phrase "without credit for an amount of time equal to the remaining portion of the sentence on the date of issuance" should be construed to deny credit for a period of time that has already been served in some fashion. To illustrate an interpretation that respects the parallel

---

7. § 508.283(b), (c)(emphasis added).

language, I modify the hypothetical to fit the third class of offenders: a convicted person is sentenced to eleven years in prison, gets paroled after four years, and is served with a revocation warrant *four* years later. Chart 2 depicts the sequence of events and how the time credits should be calculated:

Chart 2
Class 3 offenders
How the time credit statute works under the statutory language

Under the Court's interpretation of the statute as it relates to the third class of offenders, however, all time is credited *except* for the time encompassed by the "without credit" clause. A graphical depiction of the Court's interpretation appears in Chart 3:

Chart 3
Class 3 offenders
How the time credit statute works under the Court's interpretation

The problem with this interpretation is that absurd results occur if it is applied evenhandedly to the first and second classes of offenders. For these offenders, the statute says, "without credit for the time from the date of the person's release to the date of revocation" (i.e., street time). If the only time *not* credited is the time covered by the "without credit" clause, then the first and second class offenders—the ones who are not supposed to get the time credit received by the third class—will get credit for everything else, which includes the time *not yet served* on their

sentences. Applied to the first hypothetical, the Court's interpretation would result in the defendant having only three years left on his sentence, instead of the four years contemplated by the Legislature:

Chart 4
Class 1 and 2 offenders
How the time credit statute works under the Court's interpretation

| | release | revocation | |
|---|---|---|---|
| 4 yrs<br>prison time | 3 yrs<br>street time | 4 yrs<br>time not yet served | |
| credited<br>(because it was<br>served) | not credited<br>("without credit"<br>language,<br>508.283(b), (c)) | credited<br>("big remainder" minus<br>"w/o credit" time) | |

What is most telling about this interpretation is that the sooner the defendant gets revoked, the *more* time credit he gets. If the eleven-year-sentence hypothetical is modified so that the defendant gets revoked after spending only a year on the street, then the defendant obtains *six* years credit instead of four:

Chart 5
Class 1 and 2 offenders
How the time credit statute works under the Court's interpretation

| | release | revocation | |
|---|---|---|---|
| 4 yrs<br>prison time | 1 yr<br>street time | 6 yrs<br>time not yet served | |
| credited<br>(because it was<br>served) | not<br>credited<br>("without credit"<br>language,<br>508.283(b)(c)) | credited<br>("big remainder" minus<br>"w/o credit" time) | |

The Court's interpretation creates results that are the exact opposite of the manifest legislative intent.

The complexity of the language "without credit for an amount of time equal to the remaining portion of the sentence on the date of issuance" is a further reason to reject the notion that the Legislature simply wanted to confer credit for all street time. There are much simpler and clearer ways to convey such a directive, had that been the intent. The Legislature could have paralleled the language in the first part of subsection (c) and simply said "with credit" rather than "without credit" for time from the date of release to the warrant date. The Court's interpretation of the statute suggests that the language is awkward and confusing, while my interpretation shows that the language is complex but clear.

There is no reason for the Legislature to address the issue of time credit for time that has not been served. And there is no

reason for the Legislature to negatively word a grant of time credit unless the Legislature were withholding something in the process. Under the Court's interpretation of this language, the Legislature withholds nothing. Moreover, even if one were to assume that the Legislature might use negatively worded language for this purpose, the Court's interpretation does not account for the presence of the language "an amount of time equal to." The Legislature could have simply stated: "without credit for the remaining portion of the sentence on the date of issuance." In fact, the Legislature has shown that it does not need to use the words "an amount of time equal to" to refer to a specific time period that is not to be credited. It did not use those words in connection with the first and second classes of offenders when it provided that such offenders would serve their sentences "without credit for the time from the date of the person's release to the date of revocation." When the Legislature wants to withhold credit for a particular period of time, it simply refers to that time period, not to a "an amount of time equal to" that time period.

The use of the words "an amount of time equal to" means the statute does *not* refer to that time period, but to a different time period from which an equal amount of time is to be deducted.

Finally, my interpretation shows that the Legislature's treatment of the third class of offenders dovetails nicely with its treatment of the second class. The Legislature has set up a sliding scale, in which the offender gets more credit for street time the longer he successfully remains on the street. The sliding scale works by requiring the offender to serve double his remaining time (i.e. his remaining time + an amount equal to his remaining time), which essentially means that the offender will get two days of street time credit for every day of street time he serves past the mid-point. But this method of doubling an offender's remaining time works only where the offender's street time exceeds the amount of time left. If the offender's street time is less than the amount of time left, doubling the time left would actually result in taking away time served under incarceration, as shown in Chart 6:

Chart 6
Class 2 offenders
How the time credit statute would work if rules for Class 3 offenders were applied to Class 2 offenders

| | release | revocation | |
|---|---|---|---|
| 4 yrs prison time | 3 yrs street time | 4 yrs time not yet served | |
| 3 yrs credited (1 yr prison time lost) | 4yrs not credited ("without credit" language, 508.283 (c)) | not credited (because it is not yet served) | |

Of course, the Legislature did not intend to take away time served under incarceration. So, the Legislature treats offenders in the second class under a provision that gives no street time credit-the same outcome that would be reached under the

legislative formula for the third class of offenders, since that formula would yield no (positive) credit for members of the second class.

My interpretation also solves a gap in the statute: what to do with an offender whose street time *equals* his remaining time. The statutory language refers only to persons with street time that is "greater than" or "less than" the remaining time. Consider the case of an offender sentenced to twelve years, released after four years, and served with a summons or warrant exactly four years later. Must we pinpoint by the hour or the minute whether he has served more or less, so that we can determine whether he gets a lengthy time credit? Not if we recognize that the provisions applicable to class three offenders are intended to dovetail with those applicable to the second class. Applying the formula for class three offenders to a midpoint offender would yield a result of exactly zero credit, so he would not get any street time credit:

Chart 7
Mid-point offenders
How the time credit statute works under the statutory language

|  | release | revocation |  |
|---|---|---|---|
| 4 yrs prison time | 4 yrs street time | 4 yrs time not yet served |
| credited (because it was served) | not credited ("without credit" language, 508.283(c)) | not credited (because it is not yet served) |

And this would not be a harsh result under my interpretation because of the sliding scale nature of the credit. For example, a person who serves only one day past the midpoint would get only two days time credit, rather than the four years and one day credit he would receive under the Court's analysis.

In summary, under § 508.283(c), "non-aggravated" offenders receive two days of time credit for every day of street time served past the mid-point of the supervision period. The time is credited in this fashion because 1) the offender is required to serve the time not yet served, and 2) the offender gets no street time credit for an amount of time equal to the time not yet served. This interpretation is the only interpretation that makes sense in light of the language in the statute.

### 2. *Extratextual factors*

As mentioned above, *Boykin* requires a plain meaning analysis before extratextual factors may be considered. Only an ambiguity or absurd result justifies inquiry beyond the language of the statute. The language of § 508.283, while complex, is not ambiguous on this point, and the inquiry should end. But, in case an ambiguity in the language might be perceived, I have reviewed the testimony in the House committee hearing cited in the Court's opinion. That testimony supports my interpretation of the statute, rather than the Court's.

Representative Pete Gallego introduced

the bill—House Bill 1585 [8]—as "technical" and requiring illustration with a diagram:

> 1585 is a little more technical. And let me—this is kind of a combination of my background when I got here as a prosecutor and then my subsequent experience on Appropriations. Each of you should have, essentially, a little diagram that looks a little bit like this about what the bill seeks to do. And when it may— It's a lot easier for me to explain using the diagram.[9]

He then presented a base hypothetical, involving someone sentenced in 1990 for ten years, released in 1994, and revoked in 1999, and explained how that person would be treated under the law in effect at the time:

> Right now, under the current law, you take a penal offense and you say that the person was sentenced to ten years. And let's say, because I'm not real good at math, I had to do it starting from 1990 to essentially 2000, so I would not have to do much math. So your sentence is ten years. So, in theory, if you start in 1990 and you go to 2000, but you've done well in the prison system and essentially you've behaved, and so you're released in 1994. So you've served four years. Remember that you have a ten-year sentence. So you go along for five years, and in 1999 you're revoked. Well you're still a year left of your sentence. You've served four, you're released on parole for five, and with one year left, you did something wrong. So, under the current law, your discharge date moves five years, and is calculated from the date of your release. So, when you were released in '94, you still had essentially six years left. So, if you were revoked in '99, you still have to do—your discharge date moves up to 2005.[10]

Although I do not have the charts from that hearing, I can reconstruct one from this testimony:

Representative Gallego then remarked that his proposal would treat violent offenders the same as the existing law but treat nonviolent offenders differently.[11]

---

**8.** As the Court notes, although H.B. 1585 was vetoed, the exact language was in H.B. 1649. H.B. 1649 was a more comprehensive parole bill.

**9.** H.B. 1585, House Comm. on Corrections, 77th Leg., R.S. (Mar. 6, 2001) (audio at *http://www.house.state.tx.us./committees/audio77/200.htm* beginning at 1:17:25). All quotations from the hearing are exact, except for the omission of repetitive phrases and of crutch words such as "uh," "um," and "okay."

**10.** *Id.* (beginning at 1:18:05).

**11.** *Id.* (beginning at 1:20:14).

He then explained the effect of the proposed law. If the amount of time remaining when the warrant issued was greater than the offender's street time, there would be no street time credit:

> What this bill does is you take that same ten year offense and you're still sentenced in '90, you're still released in '94. Let's say that there is a warrant two years later that's issued for you to come back because your parole has been revoked. You've still got four years left. That four years is—the remaining portion of your sentence is greater than your release period. And so what happens is your discharge date is moved up two years because it is calculated from the date of the issuance of the warrant.[12]

The following diagram conforms to his testimony:

In testimony immediately following the quoted portion, Representative Gallego explains how to calculate time credit for an offender whose time remaining is *less* than his street time:

> If the remaining portion is less than the release period, then essentially one year is added. And that's coming on the next page. And I can see that I am kind of losing you all, and so perhaps the best person to explain this would be Mr. Rodriguez, who essentially lives with this, I think on a regular basis.[13]

The Court interprets this passage as meaning that the offender has one year left to serve. But Representative Gallego is saying that one year is added to the offender's discharge date. The *offender to whom he refers*—the one with less time remaining than street time—is the one in the original hypothetical. This is the offender who was sentenced in 1990, released in 1994, and revoked in 1999. Instead of adding five years to the offender's discharge date, as the old scheme would have done, House Bill 1585 would add only one year to the discharge date—resulting in a discharge in 2001. So the offender would have two years left to serve: the one year he hasn't yet served plus an amount of time equal to that one year.

Representative Gallego recognized that the proposed scheme was complicated (which would not be the case if the offender with less remaining time were simply given all of his street time) and deferred to Victor Rodriguez, the Chairman of the Board of Pardons and Paroles, for a more detailed explanation:

> I'll let Mr. Rodriguez explain, actually, in much more, I guess, user friendly terms, and kind of tell you about some of the charts they did at my request to

---

12.  *Id.* (beginning at 1:21:08).

13.  *Id.* (beginning at 1:22:01).

kind of help explain this".[14]

Chairman Rodriguez went back to the original hypothetical and explained how the law in effect at the time would add five years to the hypothetical offender's discharge date:

> Under current law, all offenses are subject to this process: If you get a ten year sentence, and supposing you follow this chart and you begin it in 1990, theoretically your discharge is in the year 2000. Under current law, under this scenario, if you were released on a date in between—in this case 1994—and then in 1999 you were revoked, then in accordance with law, the remaining portion of your sentence is recalculated without credit for the time that you were out on supervision. So, in applying current law, under this scenario, when the discharge date is recomputed, the new discharge date would move forward by about five years.[15]

Chairman Rodriguez later explained how the discharge date for this hypothetical situation would be calculated under House Bill 1585:

> On the next page, under 1585, it states that, if the amount of time remaining at the time of the warrant is less than the amount of time you've been out, then upon revocation, the remaining portion shall be recomputed without credit for an amount equal to the amount of time remaining on your sentence on the date of your warrant. And this is the illustration under the second page here. For example, in that second page illustration, this is an individual that's cleared all the hurdles. He had one year left on the date of warrant. *His new discharge date would be 2001, as opposed to 2005.*[16]

In other words, the calculation works exactly as I have stated it should in the plain meaning analysis of this opinion, as illustrated above in Chart 2. A chart depicting Chairman Rodriguez's testimony would be as follows:

I will mention one other extratextual reason for rejecting the Court's interpretation: the consequences of a particular construction. Under the Court's interpretation, offenders with the same sentence could have widely different time credits based on a difference of only a few days' street time. For example, an offender released with ten years left on his sentence could get credit for over five years if he serves five years and one day on release, while a similarly situated offender who

14. *Id.* (beginning at 1:22:49).

15. *Id.* (beginning at 1:25:11).

16. *Id.* (beginning at 1:28:50)(emphasis added).

serves two days less than the other offender would receive no credit at all. Under the actual statutory scheme, however, the time credit is graduated, so that the two days' difference results in only two days' time credit. An offender is rewarded with progressively more time credit the longer past the mid-point he successfully serves on release.

These consequences are yet another reason to interpret an ambiguous statute to impose a graduated time credit scheme. But there really is no ambiguity here. The language of the statute is clear, and so is the legislative history. I respectfully dissent.