IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. AP-75,428






EX PARTE BILLY NOYOLA, Applicant









ON APPLICATION FOR A WRIT OF HABEAS CORPUS

CAUSE NUMBER 87-CR-1769-E IN THE 148TH 

JUDICIAL DISTRICT COURT FROM NUECES COUNTY




 

 Keasler, J., delivered the opinion for a unanimous Court.


O P I N I O N



 Billy Noyola challenges the Texas Department of Criminal Justice's refusal to grant
him street-time credit under Section 508.283, Texas Government Code. We find that Noyola
is entitled to the time credit because his conviction for aggravated assault on a peace officer,
a third-degree felony, was not an offense or a statutory precursor to an offense listed in
Section 508.149(a), Texas Government Code, when his parole was revoked. Facts and Procedural Background

 On August 14, 1987, Noyola committed the felony offense of burglary of a habitation.
In January 1988, Noyola pled guilty and entered a plea of true to the enhancement paragraph
in the indictment, which alleged that Noyola had previously been convicted of burglary of
a habitation in 1984. The trial judge found Noyola guilty, and after determining that the
enhancement allegation was true, the judge sentenced Noyola to eighteen years'
imprisonment. Noyola did not appeal.

 Noyola committed the offense of aggravated assault on a peace officer, in violation
of Section 22.02 of the Penal Code, on September 27, 1992. On December 10, 1992, Noyola
was convicted of this offense and sentenced to ten years' imprisonment, to be served
concurrently with the remainder of his eighteen-year sentence for burglary of a habitation.
Although the trial court's judgment designates the offense as a second-degree felony, the
State, after a thorough review of the records in that cause, submits that Noyola was actually
convicted of the third-degree-felony offense of aggravated assault on a peace officer. Our
own review of the record confirms that Noyola's conviction is for a third-degree-felony
offense. 

 Noyola was released to parole on April 10, 2000. Approximately four years later, on
April 5, 2004, the Texas Department of Criminal Justice (TDCJ) issued a pre-revocation
warrant. Noyola's parole was later revoked. 

 After exhausting his administrative remedies, (1) Noyola filed an application for a writ
of habeas corpus challenging TDCJ's refusal to credit his eighteen-year sentence under
Section 508.283(c) of the Texas Government Code for time he spent on parole. Noyola
contends that TDCJ is improperly denying him time credit due to his 1992 conviction for
aggravated assault on a peace officer.

 Noyola was confined pursuant to the ten-year sentence when his parole was revoked
and when he filed his habeas application. Noyola recently completed his ten-year sentence. 
The fact that Noyola discharged his ten-year sentence does not render his time-credit claim
moot, however, because he is still confined under his eighteen-year sentence for burglary of
a habitation. 

 In its second supplemental answer, the State argues that Noyola's 1992 conviction for
aggravated assault on a peace officer in the third degree renders him ineligible for street-time
credit. Noyola is ineligible, according to the State, because he was ineligible for release on
mandatory supervision under the statute in effect when he committed the offense of
aggravated assault on a peace officer, Article 42.18, Section 8(c) of the Code of Criminal
Procedure. 

 Agreeing with the State, the trial judge has recommended that relief be denied, stating
"Based upon the law in effect at the time Applicant committed the offense of aggravated
assault on a peace officer, the Court recommends denial of all relief requested in the
application for writ of habeas corpus." 

 We filed and set this case to decide whether an inmate's eligibility for street-time
credit under Section 508.283(c) of the Government Code is controlled by the inmate's
eligibility for release to mandatory supervision. Stated another way: Is the mandatory
supervision statute in effect at the time the inmate committed the offense used to determine
the inmate's eligibility for time credit under Section 508.283(c), Texas Government Code,
when the inmate's release to mandatory supervision or parole is revoked? The answer is no.

Law and Analysis 

 Section 508.283(c), commonly referred to as the "street-time credit statute," applies
to all revocations of parole and mandatory supervision that occur on or after September 1,
2001. (2) When Noyola's parole was revoked the statute read as follows:

 If the parole, mandatory supervision, or conditional pardon of a person other
than a person described by Section 508.149(a) is revoked, the person may be
required to serve the remaining portion of the sentence on which the person
was released. For a person who on the date of issuance of a warrant or
summons initiating the revocation process is subject to a sentence the
remaining portion of which is greater than the amount of time from the date of
the person's release to the date of issuance of the warrant or summons, the
remaining portion is to be served without credit for the time from the date of
the person's release to the date of revocation. For a person who on the date of
issuance of the warrant or summons is subject to a sentence the remaining
portion of which is less than the amount of time from the date of the person's
release to the date of issuance of the warrant or summons, the remaining
portion is to be served without credit for an amount of time equal to the
remaining portion of the sentence on the date of issuance of the warrant or
citation. (3)


Therefore, under Section 508.283(c), an inmate may be entitled to credit for time served
while released on parole or mandatory supervision if the inmate meets the following two
conditions: (1) the inmate is not "a person described by Section 508.149(a)" of the Texas
Government Code (4); and (2) on the date that the pre-revocation warrant or summons initiating
the revocation process is issued, the remaining portion of the inmate's sentence is less than
the time the inmate spent on parole. (5) The remaining portion of the inmate's sentence "refers
to that part of the sentence remaining at the RELEASE date, less time spent on parole [or
mandatory supervision]." (6) Section 508.283(c) serves to "lessen the sentence of non-violent
parole violators (versus violent parole violators) whose time spent out on parole exceeded
their remaining sentence." (7)

 Because Section 508.283(c) refers to Section 508.149(a), we turn our attention to that
provision. When describing Section 508.149(a) in the past, we have said that it "sets out a
list of offenses that render an inmate ineligible for mandatory supervision. These offenses
are described by code, section number, and the degree of the felony." (8) The most serious or
violent offenses are included in the list. (9) Since the 2001 amendment to Section 508.283(c),
the enumerated offenses in Section 508.149(a) have included current offenses and prior
convictions. Section 508.149(a) precludes the release of an inmate "to mandatory
supervision if the inmate is serving a sentence for or has previously been convicted of" an
enumerated offense. (10) 

 We begin by considering whether Noyola meets the first condition under Section
508.283(c) that would entitle him to street-time credit. It is well-established that an inmate's
eligibility for release to mandatory supervision is controlled by the mandatory supervision
statute in effect on the date that the inmate committed the offense. (11) The law governing
mandatory supervision eligibility provides the basis for the State's argument here. The State
contends that Noyola is not entitled to street-time credit because Noyola's conviction for
aggravated assault on a peace officer in the third degree under Section 22.02, Penal Code,
renders Noyola ineligible for mandatory supervision under the statute in effect when he
committed the offense, Texas Code of Criminal Procedure, Article 42.18, Section 8(c)(5). 

 In Ex parte Byrd, we were confronted with a similar issue. In that case, the State
claimed that the applicant's 1990 aggravated assault on a peace officer conviction, which the
applicant had committed in 1986, rendered the applicant ineligible for street-time credit
under Section 508.283(c) because the applicant was a person described by Section
508.149(a). (12) In contrast to the argument presented by the State here, the State asserted that
"when § 508.283 refers to § 508.149(a), it means the version in effect at the time of
revocation rather than whatever predecessor version controls the prisoner's mandatory
supervision eligibility." (13) The list of offenses in Section 508.149(a) under the version in
effect at the time of the applicant's revocation included the "'first degree felony or a second
degree felony [of aggravated assault] under Section 22.02, Penal Code.'" (14) We assumed that
the State's interpretation of Section 508.283(c) was correct and determined that the applicant
was not a person described by Section 508.149(a) because the applicant's conviction for
aggravated assault on a peace officer under Section 22.02 of the Penal Code was a third-degree-felony offense. (15)

 Today we must decide the issue that we left unresolved in Byrd--which version of the
mandatory supervision statute is used to determine an inmate's eligibility for street-time
credit under Section 508.283(c)--the statute in effect at the time of the revocation or the
statute in effect at the time the inmate committed the offense for which he is confined.

 We begin by examining the relevant text of Section 508.283(c) that was in effect when
Noyola's release was revoked. That text, the first sentence in that section, states: "If the
parole, mandatory supervision, or conditional pardon of a person other than a person
described by Section 508.149(a) is revoked, . . . ." When reviewing this language to "discern
the fair, objective meaning of th[e] text at the time of its enactment," we focus on the "literal
text." (16) And we will give effect to the plain meaning of the statutory text unless the
"application of a statute's plain language would lead to absurd consequences that the
Legislature could not possibly have intended[.]" (17) Thus, we may consult "'extra-textual
factors' such as legislative history only when the plain language of the statute is 'ambiguous'
or when a literal interpretation would lead to 'absurd results.'" (18) 

 The plain language of Section 508.283(c) unambiguously refers to Section 508.149(a);
it does not refer to any previous version of the statute and does not exclude from its
application inmates who are ineligible for release to mandatory supervision. If we accepted
the State's argument--that an inmate is not eligible for street-time credit under Section
508.283(c) if the inmate's holding offense renders the inmate ineligible for mandatory
supervision--we would be forced to go beyond the statutory text. Our precedent governing
statutory construction, however, does not permit such an approach where the statutory
language is clear and unambiguous. When that is the case, courts must not add to or subtract
from the statutory text. (19) 

 Our application of the plain language of Section 508.283(c) does not lead to an absurd
result that the Legislature could not have intended. The Legislature intended Sections
508.283(c) and 508.149(a) to work in tandem when determining whether an inmate is eligible
for street-time credit. The starting point is the version of Section 508.283(c) in effect when
the inmate's parole or mandatory supervision is revoked. (20) By incorporating Section
508.149(a) by reference, Section 508.203(c) invokes the version of Section 508.149(a) in
effect when the inmate's parole or mandatory supervision is revoked. (21) 

 Now we must ask the following question: Was Noyola "a person described by Section
508.149(a)" when his release to parole was revoked? The version of Section 508.149(a) in
effect when Noyola's release was revoked in 2004 stated: "An inmate may not be released
to mandatory supervision if the inmate is serving a sentence for or has previously been
convicted of: . . . (7) a first degree or a second degree felony under Section 22.02, Penal
Code; . . . ." When Noyola's parole was revoked, he was confined pursuant to his ten-year
sentence for aggravated assault on a peace officer. So, the relevant inquiry is whether
Noyola was "serving a sentence for" a first- or second-degree-felony offense of aggravated
assault under Section 22.02, Penal Code, when his parole was revoked. Noyola was
convicted of the third-degree-felony offense of aggravated assault on a peace officer under
Section 22.02 of the Penal Code, and as a result, Noyola was not a person expressly
described by Section 508.149(a). But as we observed in Ex parte Byrd, the fact that an
offense is not expressly included Section 508.149(a) is not necessarily dispositive of whether
an inmate can be classified as "a person described by Section 508.149(a)" when the inmate's
release is revoked. (22) 

 In Ex parte Ervin, we held that Section 508.149(a) "includes the predecessors to the
enumerated offenses that currently make an inmate ineligible for mandatory supervision
release." (23) As a result, "[i]nmates who have been convicted of a predecessor to one of the
enumerated offenses are ineligible for mandatory supervision release." (24) Pointing to the
changes made to the mandatory supervision statute since it was first enacted in 1977, we
reasoned that "[t]he legislature has demonstrated, over time, an increasing interest in making
inmates who have committed serious crimes in the past ineligible for mandatory supervision
release." (25)

 We will assume, as we did in Ex parte Byrd, that "Ervin's holding regarding
mandatory supervision eligibility extends, via § 508.283's reference to § 508.149(a), to
street-time eligibility[.]" (26) Therefore, we must look at the "essential characteristics (the
criminal conduct, mental state, and accompanying circumstances)" (27) of Noyola's conviction
for aggravated assault on a peace officer in relation to the statute in effect at the time he
committed the offense and compare it to the aggravated assault statute in effect when
Noyola's parole was revoked. (28) In reviewing the statute in effect at the time of his
revocation, we must focus on the essential characteristics that make an offense of aggravated
assault a first- or second-degree felony.

 The indictment alleged that Noyola 

 did then and there intentionally, knowingly, or recklessly cause bodily injury
to Kenneth Markos by striking him with his fist; that Kenneth Markos was
then a peace officer acting in the lawful discharge of his official duty; and that
the defendant knew Kenneth Markos was a peace officer; . . . .


When Noyola committed the offense of aggravated assault on a peace officer, the statute
provided, in relevant, part: 

 (a) A person commits an offense if the person commits assault as defined by
in Section 22.01 of this code and the person:

. . .

 (2) threatens with a deadly weapon or threatens to cause bodily injury or
causes bodily injury to . . . a peace officer, . . . (29) 


An offense under this Section was designated as a third-degree felony, unless the person used
a deadly weapon. (30) If a deadly weapon was used, the offense was a felony in the first
degree. (31) 

 When Noyola's parole was revoked, Section 22.02 read, in part, as follows: 

 (a) A person commits an offense if the person commits assault as defined in
§ 22.01 and the person:

 (1) causes serious bodily injury to another, including the person's
spouse; or

 (2) uses or exhibits a deadly weapon during the commission of the assault.
(b) An offense under this section is a felony of the second degree, except that
the offense is a felony of the first degree if the offense is committed:

. . .

 (2) against a person the actor knows is a public servant while the public
servant is lawfully discharging an official duty, or in retaliation or on account
of an exercise of official power or performance of an official duty as a public
servant; . . . . (32)


 A comparison of these statues leads us to conclude, as we did in Byrd, (33) that the 1992
version of the aggravated assault statute that Noyola was convicted under is the statutory
predecessor to the 2004 version of the assault statute codified in Section 22.01 of the Penal
Code. When the offense concerns a peace officer, there is a marked difference between the
elements contained in the 1992 and 2004 versions of Section 22.02. In particular, the 1992
version contained the element "bodily injury" and was elevated to a first-degree felony only
if the person used a deadly weapon. (34) The 2004 version, in contrast, required a showing of
either "serious bodily injury" or the use or exhibition of a deadly weapon during the
commission of the offense. If either one of those elements was present, and the offense was
against a public servant, the offense was classified as a first-degree felony. 

 Noyola was convicted of causing bodily injury to a peace officer. The offense did not
involve the use of a deadly weapon. The criminal conduct underlying Noyola's 1992
conviction does not satisfy the elements for a first- or second-degree conviction under the
2004 version of the aggravated assault statute. As a result, the aggravated assault offense
that Noyola committed, and was convicted of, in 1992 is not a statutory predecessor to the
aggravated assault offense defined in the 2004 version of Section 22.02. 

 The statutory successor to the offense Noyola committed in 1992, however, is found
in the 2004 version of the assault statute, Section 22.01 of the Penal Code. Section
22.01(a)(1) prohibited "intentionally, knowingly, or recklessly caus[ing] bodily injury to
another." (35) The offense was designated a third-degree felony if the offense was directed at
a public servant. (36) When Noyola's release was revoked, Section 508.149(a) did not include
the offense of assault under Section 22.01 of the Penal Code in the list of offenses that
rendered a prisoner ineligible for release to mandatory supervision. Noyola, therefore, was
not "a person described by Section 508.149(a)" when his release was revoked. As a result,
we find that Noyola satisfied the first condition entitling him to street-time credit under
Section 508.283(c) and consider whether he satisfied the second condition. 

 Based on an affidavit filed by the Review and Release Processing Section of TDCJ's
Parole Division, the State concedes that on the date that the pre-revocation warrant was
issued initiating the revocation process, the remaining portion of Noyola's eighteen-year
sentence for burglary of a habitation was less than the amount of time Noyola spent on
parole. Nothing in the record compels us to disagree with TDCJ's time-credit calculation. 
When Noyola was released to parole, he had approximately seven years, eight months, and
twelve days to serve until his sentence discharged. Noyola spent approximately four years
and five days on parole before the warrant initiating the revocation process was issued. 
Therefore, the remaining portion of Noyola's sentence on the date the pre-revocation warrant
issued was less than the amount of time Noyola spent on parole. Noyola has satisfied the
second condition entitling him to street-time credit under Section 508.283(c).

Conclusion Noyola is entitled to relief. Noyola's eligibility for street-time credit under Section
508.283(c) is controlled by the version of Section 508.149(a) in effect at the time of his
revocation. Noyola's 1992 conviction for aggravated assault on a peace officer in the third
degree was not one of the enumerated offenses in Section 508.149(a). Also, Noyola's
offense was not a precursor offense to the first- and second-degree-felony offenses listed in
Section 508.149(a) when his release was revoked. Finally, the remaining portion of Noyola's
sentence was less than the amount of time Noyola spent on parole. As a result, Noyola is
entitled to street-time credit for the period of time he spent on parole between 2002 and 2004. 
Noyola's remaining claims are denied. TDCJ is ordered to credit Noyola's eighteen-year
sentence for burglary of a habitation accordingly. Copies of this opinion shall be sent to
TDCJ-CID and the Board of Pardons and Paroles.


DATE DELIVERED: February 28, 2007.

PUBLISH


 

1. Tex. Gov't Code Ann. § 501.0081 (Vernon 2004) (originally added by Acts
1999, 76th Leg., ch. 1188, § 1.38(a), eff. Sept. 1, 1999).
2. Ex parte Spann, 132 S.W.3d 390, 392 (Tex. Crim. App. 2004) (quoting Tex.
Gov't Code Ann. § 508.283 (Vernon 2004)); Ex parte Byrd, 162 S.W.3d 250, 252 (Tex.
Crim. App. 2005) (citing Acts 2001, 77th Leg., ch. 856, § 11). 
3. Tex. Gov't Code Ann. § 508.283(c) (Vernon 2004).
4. Tex. Gov't Code Ann. § 508.283(c); Ex parte Byrd, 162 S.W.3d at 251-52.
5. Tex. Gov't Code Ann. § 508.283(c); Ex parte Spann, 132 S.W.3d at 393; Ex
parte Byrd, 162 S.W.3d at 251-52.
6. Ex parte Spann, 132 S.W.3d at 396 (emphasis in original).
7. Id. at 393-94.
8. Ex parte Byrd, 162 S.W.3d at 252. 
9. Ex parte Ervin, 187 S.W.3d 386, 389 (Tex. Crim. App. 2005); Ex parte Spann,
132 S.W.3d at 394.
10. Tex. Gov't Code Ann. § 508.149.
11. Ex parte Thompson, 173 S.W.3d 458, 459 (Tex. Crim. App. 2005) (citing Ex
parte Hall, 995 S.W.2d 151, 152 (Tex. Crim. App. 1999)); Ex parte Mabry, 137 S.W.3d
58, 62 n.10 (Tex. Crim. App. 2004) (Keasler, J., concurring).
12. Ex parte Byrd, 162 S.W.3d at 251.
13. Id. at 252 (internal citation omitted).
14. Id. (quoting Tex. Gov't Code § 508.149(a)(7)) (original emphasis).
15. Id. at 252-53.
16. Boykin v. State, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).
17. Id. (emphasis in original). 
18. Ex parte Spann, 132 S.W.3d 390, 393 (Tex. Crim. App. 2004) (quoting Boykin,
818 S.W.2d at 785).
19. Coit v. State, 808 S.W.2d 473, 475 (Tex. Crim. App. 1991) (citing Ex parte
Davis, 412 S.W.2d 46, 52 (Tex. Crim. App. 1967)).
20. See Ex parte Spann, 132 S.W.3d 390, 392 (Tex. Crim. App. 2004) (quoting
Tex. Gov't Code Ann. § 508.283). 
21. See Tex. Gov't Code Ann. § 311.027 (Vernon 2004). 
22. 162 S.W.3d at 253.
23. 187 S.W.3d at 389.
24. Id.
25. Id. at 388.
26. 162 S.W.3d at 253 (emphasis in original).
27. Ex parte Thompson, 173 S.W.3d at 461.
28. Id. at 460; Ex parte Byrd, 162 S.W.3d at 253; Ex parte Mabry, 137 S.W.3d at
59-60.
29. Tex. Penal Code Ann. § 22.02(a)(2) (Vernon Supp. 1992) (as amended by
Acts 1991, 72nd Leg., ch. 334, § 2). 
30. Tex. Penal Code Ann. § 22.02(c). 
31. Id.
32. Tex. Penal Code Ann. § 22.02 (Vernon Supp. 2004-05). 
33. 162 S.W.3d at 253-54.
34. Tex. Penal Code Ann. § 22.02(c) (Vernon Supp. 2002).
35. Tex. Penal Code Ann. § 22.01(a)(1) (Vernon Supp. 2002). 
36. Tex. Penal Code Ann. § 22.01(b)(1).