**Ex Parte Andrew Michael MABRY, Applicant.**

**No. 74864.**

Court of Criminal Appeals of Texas, En Banc.

June 9, 2004.

Hardy Burke, Denton, for Appellant.

Kathleen Walsh, Asst. DA, Denton, Matthew Paul, State's Attorney, Austin, for State.

## *OPINION*

JOHNSON, J., delivered the opinion of the Court in which MEYERS, PRICE, WOMACK, HOLCOMB, and COCHRAN, JJ., joined.

This is an application for a writ of habeas corpus forwarded to this Court pursuant to the provisions of TEX.CODE CRIM. PROC., Article 11.07. In 1990, applicant was convicted of burglary of a habitation and sentenced to ten years imprisonment, probated for ten years. In 1991, applicant's probation was revoked, and he was sentenced to 10 years confinement in the Texas Department of Criminal Justice—

---

institution division (TDCJ—id, now TDCJ—CID).

Applicant seeks both credit for time spent on parole and a mandatory supervision date. He asserts that, because he was convicted in 1990, he is not covered by the provisions of the current version of Gov't Code § 508.149, and because of the dictates of the law at the time of his offense, neither is he barred from mandatory supervision by that law. The trial court has made no findings of fact or conclusions of law, nor has the state filed a response.

At the time of applicant's offense, burglary was a first-degree felony if: the premises were a habitation; *or*, any party to the offense was armed with explosives or a deadly weapon; *or*, any party to the offense injured or attempted to injure anyone in effecting entry or while in the building or in immediate flight therefrom. Tex. Penal Code § 30.02(d)(1–3)(1989). The current Penal Code defines a burglary as a first-degree felony if: the premises are a habitation; *and*, any party to the offense entered the habitation with intent to commit a felony other than felony theft or committed or attempted to commit a felony other than felony theft.

The Penal Code sections must be read in conjunction with the relevant statutes that govern eligibility for mandatory supervision. At the time of applicant's offense, that statute was Tex.Code Crim. Proc. article 42.18, § 8(c), which provided that an inmate who was serving a sentence for a first-degree felony under Tex. Penal Code § 30.02 (burglary) was ineligible for mandatory supervision if the offense was punished (not punishable) under subsections 30.02(d)(2) (armed with explosives or a deadly weapon) or (d)(3) (injury). Mandatory supervision was not barred for burglaries that were deemed

first-degree felonies because the premises were a habitation.

After amending Article 42.18 in 1995, the legislature repealed it in 1997 and moved the contents to the Government Code; it also moved the provisions describing inmates who are ineligible for mandatory supervision to Gov't Code, § 508.149. Session Laws, 75th Legislature, Regular Session, Chapter 165, §§ 12.01, 12.22 and 32.01 (1997). Section 508.149 now bars mandatory supervision for inmates who are serving a sentence for a first-degree felony under Tex. Penal Code § 30.02 (burglary). Gov't Code, § 508.149(a)(13) (premises are a habitation *and* intent to commit or committed or attempted to commit a felony other than felony theft).

At the time of applicant's conviction, all burglaries of a habitation were classified as first-degree felonies, regardless of the underlying offense, but only offenses punished under subsections (d)(2) and (d)(3) were bars to release on mandatory supervision. The writ record includes applicant's indictment for the 1990 burglary. It alleges that applicant did "enter a habitation with intent to commit theft" and did "enter a habitation and did attempt to commit and committed theft" on or about May 30, 1990. By its terms, the indictment alleges burglary as a first-degree felony because the premises were a habitation and does not allege weapons or injury. Appellant argues that he is neither an inmate described under § 508.149, nor an inmate described under Art. 42.18(c), and is therefore eligible for mandatory supervision.

The amendments contained in Chapter 263 of the Session Laws for the 74th Legislature (1995), which became effective September 1, 1996, contained a saving clause.

Section 3(a) The change in law made by this Act applies only to a prisoner serving a sentence for an offense committed on or after the effective date of this Act. For purposes of this section, an offense is committed before the effective date of this Act if any element of the offense occurs before the effective date.

Section 3(b) A prisoner serving a sentence for an offense committed before the effective date of this Act is covered by the law in effect when the offense was committed, and the former law is continued in effect for that purpose.

Session Laws, 74th Legislature, Regular Session, Chapter 263, §§ 3 and 4 (1995).

These clauses reflect a clear intention by the Legislature to apply the old law to prisoners serving a sentence for an offense committed prior to the September 1, 1996, effective date. Thus the law prior to those revisions applies to applicant, whose offense was committed in 1990.

Under the statutes in place at the time of applicant's offense, release on mandatory supervision was barred only for those serving sentences for burglary charged as a first-degree felony because of the presence of explosives or a deadly weapon or because of injury during the offense. The indictment under which applicant was convicted alleged burglary as a first-degree felony because the premises were a habitation. Thus, applicant, at the time of his offense, was eligible for mandatory supervision and remains so because of the saving clause of 1995. Even if we apply the current version of the law, applicant remains eligible for mandatory supervision because his burglary conviction was based on intent to commit theft, which is exempted.

Because we hold that applicant is eligible for mandatory supervision, we must now address whether he is entitled to street time for time accrued on his last release on parole. Appellant was granted 145 days credit at the time of his original commitment. He accrued an additional 250 days during his first incarceration on this charge and an additional 752 days after his first parole revocation for a total of 1147 days. Taking 10 years to be equal to 3650 days, at the time of applicant's release on January 17, 1997, he had a remaining portion of 3650 days—1147 days, or 2503 days. On September 20, 2001, the date on which the warrant for his second parole revocation issued, he had been on parole for 1707 days, and the time left until his parole would discharge if not revoked was equal to 796 days. He thus had served over half of his remaining portion and is entitled to credit for the time spent on parole.

Accordingly, applicant is entitled to relief. TDCJ—CID shall treat applicant as an inmate eligible for release to mandatory supervision and, because applicant qualifies for street-time credit, shall credit him with the time he spent on parole during his latest release. Ex Parte *Spann*, 132 S.W.3d 390 (Tex.Crim.App., 2004). Copies of this opinion shall be sent to TDCJ—CID and the Board of Pardons and Paroles.

KEASLER, J., filed a concurring opinion.

KELLER, P.J., filed a concurring and dissenting opinion in which HERVEY, J., joined.

KEASLER, J., concurring.

I agree with the Court's result but I disagree with its analysis. I therefore concur only in the result.

## I.

In 1991, Andrew Michael Mabry was convicted of burglary of a habitation for

actions committed in 1990. He was paroled and revoked twice. Upon revocation, prison officials declined to give him credit for the time he spent on parole. Prison officials also concluded that Mabry's offense was not eligible for mandatory supervision. Mabry filed this writ application arguing that he is entitled to credit for his street time and that his offense should be designated as eligible for mandatory supervision. I agree with the Court's decision to grant relief.

## II.

At the time that Mabry committed his burglary offense, the applicable burglary statute stated:

### § 30.02 Burglary

(a) A person commits an offense if, without the effective consent of the owner, he:

(1) enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony or theft; or

(2) remains concealed, with intent to commit a felony or theft, in a building or habitation; or

(3) enters a building or habitation and commits or attempts to commit a felony or theft.

\* \* \*

(c) Except as provided in Subsection (d) of this section, an offense under this section is a felony of the second degree.

(d) An offense under this section is a felony of the first degree if:

(1) the premises are a habitation; or

(2) any party to the offense is armed with explosives or a deadly weapon; or

(3) any party to the offense injures or attempts to injure anyone in effecting entry or while in the building or in immediate flight from the building.[1]

Mabry's indictment alleged two possible methods of committing the burglary. The first paragraph charged that he "did then and there intentionally, without the effective consent of Kenneth Williams, the owner thereof, enter a habitation with intent to commit theft." The second paragraph alleged that he "did then and there knowingly and intentionally, without the effective consent of Kenneth Williams, the owner thereof, enter a habitation and did attempt to commit and committed theft." So Mabry's indictment alleged offenses under subsections (a)(1) and (a)(3) of former § 30.02. There is no allegation of weapons or injury pursuant to subsections (d)(2) or (d)(3).

Mabry's judgment reflects his conviction for "burg. of hab." in the "1st" degree. This is in line with the requirements of the statute, which provided that burglary was a first degree felony if the premises were a habitation.[2]

At the time that Mabry committed this burglary, the statute governing an inmate's eligibility for release to mandatory supervision was former Art. 42.18, § 8(c).[3] At that time, that statute provided that a prisoner could not be released to mandatory supervision if he were serving a sentence for, among other things, "a first degree felony under Section 30.02 Penal Code (Burglary), if the offense is punished

---

**1.** Former Tex. Penal Code § 30.02 (1990) (amended by Acts 1993, 73rd Leg., ch. 900, § 1.01, eff. Sept. 1, 1994; Acts 1995, 74th Leg., ch. 318, § 8, eff. Sept. 1, 1995; Acts 1999, 76th Leg., ch. 727, § 1, eff. Sept. 1, 1999).

**2.** *Id.* at § 30.02(d)(1).

**3.** Former Tex.Code Crim. Proc. Art. 42.18, § 8(c) (Repealed by Acts 1997, 75th Leg., ch. 165, § 12.22, eff. Sept. 1, 1997).

under Subsection (d)(2) or (d)(3) of that section."[4]

While Mabry is serving a sentence for a first degree felony under § 30.02, he is not being punished under either subsection (d)(2) or (d)(3). Therefore, under the law in effect at the time that Mabry committed this offense, he is eligible for mandatory supervision.

But prison officials have concluded otherwise, presumably based upon the current law governing an inmate's eligibility for release to mandatory supervision. That statute reads in pertinent part as follows:

§ 508.149 Inmates Ineligible for Mandatory Supervision

(a) An inmate may not be released to mandatory supervision if the inmate is serving a sentence for or has been previously convicted of:

* * *

(13) a first degree felony under Section 30.02, Penal Code.[5]

The language regarding subsections (d)(2) and (d)(3) of § 30.02 is no longer present. It was deleted from Art. 42.18 in 1995, before that statute was repealed and replaced with § 508.149.[6] So since Mabry is serving a sentence for a first-degree felony under § 30.02, and § 508.149 contains no requirement that his conviction be pursu-

ant to subsections (d)(2) or (d)(3), Mabry would be ineligible for mandatory supervision if the current statute were applied.

Of course, there is no reason that the current statute should apply. We have repeatedly held that, in determining an inmate's eligibility for mandatory supervision or parole, the governing statute is the one that was in effect when the offense was committed. Over twenty years ago, we denied relief to an applicant, stating that he "should be serving his sentence under the guidelines of the Adult Probation and Parole law in effect at the time of the offense."[7] A few years later, we granted relief to an applicant whose plea bargain was impossible to perform. We noted that, while the prosecutor and the trial judge had given incorrect information, the "applicant's trial attorney did not give applicant erroneous advice on parole eligibility since it was his opinion, which was correct, that the law in effect at the time of commission of the offense was applicable."[8] And most recently in *Ex parte Hall*,[9] we applied the statute in effect at the time the applicant committed his offense rather than the one in effect at the time he committed the offense resulting in his prior conviction. Indeed, most of the time we just apply the law that was in effect at the time that the offense was committed without discussion.[10]

---

4. *Id.*

5. Tex. Gov't Code § 508.149 (Vernon Supp. 2004).

6. Acts 1995, 74th Leg., Ch. 263, §§ 1–4 (eff. Sept.1, 1995).

7. *Ex parte Yates*, 659 S.W.2d 840, 841 (Tex. Crim.App.1983).

8. *Ex parte Trahan*, 781 S.W.2d 291, 293 (Tex. Crim.App.1989) (parenthetical deleted). *See also Ex parte Choice*, 828 S.W.2d 5 (Tex.Crim. App.1992).

9. 995 S.W.2d 151 (Tex.Crim.App.1999).

10. *See, e.g., Ex parte Roberts*, 987 S.W.2d 575, 576 (Tex.Crim.App.1999); *Ex parte Ruthart*, 980 S.W.2d 469, 471 (Tex.Crim.App.1998); *Ex parte Schroeter*, 958 S.W.2d 811 (Tex.Crim. App.1997); *Ex parte Hatcher*, 894 S.W.2d 364, 365 and n. 1 (Tex.Crim.App.1995); *Ex parte Alexander*, 861 S.W.2d 921, 923 (Tex. Crim.App.1993); *Ex parte Pool*, 779 S.W.2d 866 (Tex.Crim.App.1989).

And even without this established line of precedent, the enabling legislation itself specifically provides that the statutory change that deleted the reference to subsections (d)(2) and (d)(3) of § 30.02 "applies only to a prisoner serving a sentence for an offense committed on or after the effective date of this Act." [11]

### III.

So in light of our caselaw and the relevant legislation, the statute that should apply is the one in effect when Mabry's burglary was committed. Nevertheless, there is a distinctive issue in this case that must be addressed. Section 508.149 states that an inmate may not be released to mandatory supervision "if the inmate is serving a sentence for or has been previously convicted of" any of the enumerated offenses, including first-degree burglary under § 30.02.[12]

Mabry concedes that, "at a glance," this language might indicate that a person like him, who was previously convicted of first-degree burglary, is ineligible for mandatory supervision. Nevertheless, Mabry argues that this cannot be true in light of the legislation which specifically makes the relevant statutory amendment applicable only to offenses committed after its effective date. I agree with Mabry, both because of the enabling legislation and because there is another, more reasonable, interpretation of the language in § 508.149.

Why does § 508.149 refer to previous convictions? The answer becomes clear when considering the fact that many inmates, unlike Mabry, have multiple convictions. When an inmate has multiple convictions, he will have one conviction which governs his release date, either because it is the most recent, contains the longest sentence, or has the least amount of time credits. It is the conviction that will keep the prisoner in custody for the greatest amount of time. A prisoner's governing or "holding" conviction could be for an offense committed after 1997, but he might also have a previous conviction for first-degree burglary. In that instance, the Legislature sought to make clear that § 508.149 would apply to him, because the holding conviction is for an offense that was committed after the statute's effective date. Even if that holding conviction were not on the list of enumerated offenses, the prisoner would still be ineligible for mandatory supervision if he had previously been convicted of an offense on the list.

So while the language seems confusing when applied to a case like Mabry's, it makes good sense when considering an inmate with multiple convictions. As we recognized in *Hall*, the law that applies is the one in effect at the time the prisoner committed his holding offense, not his prior conviction(s). Since Mabry has only one conviction, he falls only within the first phrase of § 508.149—the "is serving a sentence for" language. This is because his only conviction is the sentence which he is serving. The second phrase—the "has been previously convicted of" language— does not apply to Mabry.

### IV.

The majority's opinion is faulty in two respects.

First, and most importantly, the majority does not do the work that I have done here. This case is not so obvious as the majority makes it sound. We must acknowledge the phrase "has previously been convicted of" in § 508.149 and explain why it does not require a different result.

---

11. Acts 1995, 74th Leg., Ch. 263, §§ 3 and 4 (eff.Sept.1, 1995).

12. Tex. Gov't Code § 508.149 (Vernon Supp. 2004).

Additionally, the majority erroneously states, "Even if we apply the current version of the law, applicant remains eligible for mandatory supervision because his burglary conviction was based on intent to commit theft, which is exempted." [13] I see at least three flaws with this statement.

First, it is dicta. The current version of the law does not apply, so we should not apply it.

Second, the majority appears to confuse the notion of applying the former or current version of the mandatory supervision law with applying the former or current version of the burglary statute. The only issue in this case is whether to apply the former or current version of the mandatory supervision law. In no way should the current version of § 30.02 apply at all. Mabry was convicted under the previous version of § 30.02, not the current version. The current version of § 30.02 is irrelevant.

Finally, even if the current version of § 30.02 were somehow relevant, the majority misreads that version. As best I can tell, the majority thinks that Mabry's offense would not constitute a first-degree felony under the current statute because a conviction based on intent to commit theft "is exempted."

The current version of § 30.02 provides that a burglary is a first-degree felony if:

(1) the premises are a habitation; and

(2) any party to the offense entered the habitation with intent to commit a felony other than felony theft or committed or attempted to commit a felony other than felony theft.[14]

The majority implies that this language "exempts" felony theft from constituting a first-degree burglary offense.

Be that as it may, that is not the reason that Mabry's actions would not constitute a first-degree felony under the current statute. The reason is that Mabry's indictment alleged that, in the course of entering the habitation, Mabry committed or attempted to commit theft—not a felony theft or other felony. Mabry comes nowhere close to meeting the first-degree requirements of the current burglary statute because he was charged only with entering a habitation and attempting to commit or committing a misdemeanor.

Nevertheless, all of this is beside the point because the current burglary statute is irrelevant in this case.

## V.

Mabry is eligible for mandatory supervision because the law in effect at the time that he committed this burglary provided that he was eligible.

He is also entitled to credit for the time he spent on parole. Under § 508.283(c),[15] an inmate is entitled to that credit if two conditions are met. First, the inmate must not be described by § 508.149(a). As I already discussed, Mabry meets that requirement. The second condition has to do with the amount of time remaining on the prisoner's sentence at the time that the parole revocation warrant is issued. If, at that time, the individual's remaining sentence is less than the time period from the date of his release to the date the warrant was issued, then he receives credit for the time he spent on parole. In other words, the individual is entitled to credit for the time spent on parole if, at the time the

---

13. *Ante,* op. at 60.

14. Tex. Penal Code § 30.02 (Vernon 2003).

15. Tex. Gov't Code § 508.283(c) (Vernon Supp.2004).

warrant is issued, he has already served over half of his remaining sentence.[16]

The record reflects that Mabry meets this requirement as well. Mabry attaches a parole eligibility worksheet from TDCJ. It reflects that as of Mabry's most recent release to parole (1/17/97), he had a sentence discharge date of 2/21/04. So at the time of his release, he had almost 6 years remaining on his sentence. A parole revocation warrant was then issued against him on 9/20/01. At that time, Mabry had already served about 4 years and 8 months on parole, which is well over half of the 6 years that remained on his sentence. Or, in the language of the statute, the time remaining on Mabry's sentence as of 9/20/01 was about 2 years and 5 months, which was less than the time he spent on parole (4 years and 8 months).

As a result, Mabry is entitled to credit for the time spent on his most recent release to parole.

### VI.

I concur in the Court's judgment.

KELLER, P.J., concurring and dissenting in which HERVEY, J., joined.

I concur in the Court's opinion regarding the issue of applicant's eligibility for mandatory supervision, and I agree that applicant is entitled to some "street time" credit on his sentence, but, for the reasons given in my dissent in *Ex parte Spann*,[1] I disagree as to the amount of time credit.

This opinion is just the first indication of the enormous impact of the Court's erroneous interpretation of the time credit statute in *Spann.* The *Spann* opinion will affect every mandatory-supervision eligible prisoner who is entitled to street time credit. We are just now seeing the tip of the iceberg, as more and more prisoners will receive far more time credit than the Legislature intended to give them.

In this case, for example, applicant receives over two years more time credit than he should. Instead of awarding applicant the 911 days that the Legislature intended to give him, the Court, under *Spann,* awards him the full 1707 days spent on the street—a difference of 796 days.[2]

I respectfully dissent to the amount of time awarded.

---

16. *See Ex parte Spann,* 132 S.W.3d 390 (2004).

1. 132 S.W.3d at 396–397(Keller, P.J., dissenting).

2. Applicant should earn two days for every day served on the street past the midpoint. Because he had 796 days left upon revocation, the legislative scheme requires him to serve twice that time: 1592 days. Or, to put it in terms of the two-for-one-past-the-midpoint formula: 2503 (remaining time on release) divided by 2 equals 1251.5 (the midpoint). 1707 (time on the street) minus 1251.5 (the midpoint) equals 455.5 (time past the midpoint). Multiplying 455.5 by 2 (two for one past the midpoint) yields 911 (amount of "street time" credit). Subtracting 911 ("street time" credit) from 2503 (time remaining upon release) yields 1592 (days left to serve).