

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. WR-44,786-06

### EX PARTE RICHARD ANTHONY RIVERS, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### CAUSE NO. 0710442-D IN THE 178TH DISTRICT COURT
### HARRIS COUNTY

MCCLURE, J., delivered the opinion of the Court in which KELLER, P.J., and HERVEY, RICHARDSON, NEWELL, KEEL, and WALKER, JJ., joined. YEARY, J., filed a concurring and dissenting opinion in which SLAUGHTER, J., joined.

## O P I N I O N

Is it legal for the Texas Department of Criminal Justice to decline to release an inmate to mandatory supervision on one sentence until the inmate is eligible for release on all concurrent sentences? Because Applicant is eligible for mandatory supervision release on one of his convictions, we grant relief as to that sentence. However, because Applicant is ineligible for mandatory supervision on his second sentence, he is not entitled to immediate release as to that sentence.

## I.     BACKGROUND

Applicant is serving two sentences that involve Texas's mandatory supervision statute in both its automatic and discretionary forms. Prior to 1996, all eligible inmates whose good time plus actual time in prison equaled the total length of their sentences were absolutely required to be released on mandatory supervision. *See* Act of May 23, 1987, 70th Leg., R.S., ch. 1101, § 7, sec. 8(c), 1987 Tex. Gen. Laws 3750, 3754, *repealed by* Act of May 8, 1997, 75th Leg., R.S., ch. 165, § 12.22, 1997 Tex. Gen. Laws 327, 443 (current version at Tex. Gov't Code Ann. §§ 508.147–508.149).[1] The Parole Board had no discretion to deny release to an inmate even if the Board was certain he would pose a clear and present danger to society. *See* House Comm. Report, Bill Analysis, Tex. H.B. 1433, 74th Leg., R.S. (1995) (amending then Tex. Code Crim. Proc. art. 42.18, § 8(c) and adding subsection (c-1), now codified at Tex. Gov't Code § 508.149) (noting "once eligible inmates reach an average of 48% of their total sentence, the Pardons and Parole Board has no discretion or decision-making power regarding their release").

Concerned with this "automatic open-door policy," the Texas Legislature repealed the mandatory supervision statute and enacted a policy that provided for some discretion in the Texas Department of Criminal Justice's (TDCJ) decision to release an inmate to mandatory supervision. Act of May 29, 1995, 74th Leg., R.S., ch. 263, 1995 Tex. Gen. Laws 2592, 2592–93, *repealed by* Act of May 8, 1997, 75th Leg., R.S., ch. 165, § 12.22,

---

[1] In 1995, an eligible inmate whose actual calendar time plus accrued good conduct time equaled the term of his sentence was *automatically* released on mandatory supervision and treated as if he were on parole. Act of May 23, 1987, 70th Leg., R.S., ch. 1101, § 7, sec. 8(c), 1987 Tex. Gen. Laws 3750, 3754 (repealed 1997).

1997 Tex. Gen. Laws 327, 443 ("H.B. 1433"). Effective September 1, 1996, the revised statute, now found in the Government Code, states, "an inmate may not be released to mandatory supervision if a parole panel determines that: (1) the inmate's accrued good conduct time is not an accurate reflection of the inmate's potential for rehabilitation; and (2) the inmate's release would endanger the public." Tex. Gov't Code Ann. § 508.149(b).

The amendments also contained a saving clause, applying the change in the law to offenses committed after the effective date of the statutory amendment, while retaining the prior law for offenses committed before the effective date. *See* H.B. 1433 at §§ 3 and 4;[2] *see also Ex parte Mabry*, 137 S.W.3d 58, 59–60 (Tex. Crim. App. 2004) (holding that "[t]hese clauses reflect a clear intention by the Legislature to apply the old law to prisoners serving a sentence for an offense committed prior to the September 1, 1996, effective date. Thus, the law prior to those revisions applies to applicant, whose offense was committed in 1990.").

In 1995, Applicant committed a burglary of a habitation with intent to commit theft. He was convicted of that offense in 1997, and punishment was assessed at confinement for

---

[2] The amendments contained in H.B. 1433, which became effective September 1, 1996, contained the following:

> Section 3(a) The change in law made by this Act applies only to a prisoner serving a sentence for an offense committed on or after the effective date of this Act. For purposes of this section, an offense is committed before the effective date of this Act if any element of the offense occurs before the effective date.

> Section 3(b) A prisoner serving a sentence for an offense committed before the effective date of this Act is covered by the law in effect when the offense was committed, and the former law is continued in effect for that purpose.

thirty-five years ("1997 conviction"). Applicant was eligible for mandatory supervision (MS) on that sentence and remains so because of the savings clause. *See* Act of May 23, 1987, 70th Leg., R.S., ch. 1101, § 7, sec. 8(c), 1987 Tex. Gen. Laws 3750, 3754 (repealed 1997).

In 2013, while on supervised release for the 1997 conviction, Applicant committed another burglary of a habitation. He was convicted, and punishment was assessed at ten years' confinement ("2013 conviction"). The 2013 conviction was ordered to run concurrently with the 1997 conviction. The 2013 conviction is subject to the 1996 change to the supervised release statute in which release to mandatory supervision is no longer automatic but subject to the discretion of the parole board. *See* Tex. Gov't Code Ann. §§ 508.0443(a)(1), 508.147(a), 508.149(b).

On January 24, 2020, Applicant was notified that he would be reviewed for discretionary mandatory release (DMS) on the 2013 conviction. In March 2020, the Board of Pardons and Paroles decided to deny release on this sentence. The Board again denied Applicant's release to DMS in February 2021.

In May 2020, Applicant's 1997 conviction became eligible for mandatory supervision. However, the Texas Department of Criminal Justice (TDCJ) notified Applicant that he would not be released until he became eligible for release on all concurrent sentences.

## II.    ARGUMENTS OF THE PARTIES

Applicant alleges that TDCJ is misinterpreting the phrase "eligible for release" to mean than an inmate must be granted DMS in the 2013 conviction in order to become eligible for release in his 1997 conviction.

The State disagrees and counters that an inmate should not be released to supervision on an eligible sentence, even if entitled to immediate release, if concurrently serving a sentence ineligible for release. The State argues that this is not a denial of release but, instead, a delay until the inmate is no longer prevented from release on the other sentence. The State argues this is legal for two reasons. First, a proper reading of the MS statute shows inmates are entitled to supervised release only on eligible sentences. Otherwise, according to the State, interpreting the statute to mean immediate release, regardless of the inmate's eligibility of release on any other sentences he is currently serving, would lead to absurd consequences that the Legislature did not intend.  Second, the State contends that Applicant's interpretation of the statute would violate other statutes, namely, the DMS statute. The State argues that the DMS statute requires sentence credits before release, necessitates the parole board's discretion in approving release, and, in some instances, simply prohibits release. Immediate release, according to the State, would violate this statute.

## III.    ANALYSIS

### i.    *TDCJ has no discretion to deny release.*

As discussed above, prior to the enactment of the discretionary mandatory supervision release statute, TDCJ had no discretion to deny mandatory release to an inmate. The mandatory supervision statute speaks in unequivocal language that an eligible inmate whose actual calendar time plus accrued good conduct time equaled the term of his sentence is *automatically* released on mandatory supervision. *See* Act of May 23, 1987, 70th Leg., R.S., ch. 1101, § 7, sec. 8(c), 1987 Tex. Gen. Laws 3750, 3754 (repealed 1997). Therefore, in the case of Applicant's 1997 conviction, there is no discretion in releasing him at all. It appears that TDCJ's policy of not "releasing" a prisoner to mandatory supervision on one concurrent sentence until the prisoner is "eligible for release" on all concurrent sentences runs afoul of the mandatory supervision statute.

ii.     *TDCJ has misinterpreted the amendment to the MS statute.*

Applicant alleges that TDCJ is changing the holding offense in situations where an inmate is serving an MS-eligible sentence and a DMS-eligible sentence concurrently. As discussed above, eligibility for mandatory supervision is determined by the statute in effect when the offender's "holding offense" is committed. *Ex parte Thompson*, 173 S.W.3d 458, 459 (Tex. Crim. App. 2005). A "holding offense" is the offense that governs an offender's release date. *See Ex parte Mabry*, 137 S.W.3d 58, 63 (Tex. Crim. App. 2004) (Keasler, J., concurring).

In Applicant's case, TDCJ originally set Applicant's 1997 conviction as the holding offense for purposes of calculating Applicant's MS release date. However, once that date passed, TDCJ switched Applicant's holding conviction to the 2013 conviction.

The State argues that TDCJ's policy of not releasing inmates to mandatory supervision until they are eligible to be released on all concurrent sentences is the most appropriate option: it delays but does not deny release to those who have essentially interfered with their right to immediate release by their new convictions.

Applicant alleges the holding offense should be static and, in his case, the holding offense should be his 2013 conviction; otherwise, TDCJ is violating the prohibition against *ex post facto* laws. Applicant alleges the current policy allows TDCJ to "turn Applicant's MS-eligible sentence into what amounts to be a DMS-eligible sentence."

An *ex post facto* violation occurs when a statute changes the punishment and inflicts greater punishment than the law attached to a criminal offense when committed. *Ex parte Hallmark*, 883 S.W.2d 672, 674 (Tex. Crim. App. 1994). Generally, "[o]nly the legislature can violate either the federal or state *Ex Post Facto* Clauses because . . . both are 'directed at the Legislature, not the courts.'" *Ex parte Heilman*, 456 S.W. 3d 159, 163 (Tex. Crim. App. 2015) (quoting *Ortiz v. State*, 93 S.W.3d 79, 91 (Tex. Crim. App. 2002)). In assessing such claim, a court must "look beyond the actor that is directly committing the alleged violation for some legislative origin of the alleged violation…" *Heilman*, 456 S.W.3d at 165. Here, Applicant is not alleging that the statute violates the prohibition against *ex post facto* laws but that TDCJ's application of the statute violates the *ex post facto* clause. Since Applicant does not allege the Legislature violated the clause in the enactment of the statute, we decline to extend an *ex post facto* violation to TDCJ for exercising their policy to release inmates to mandatory supervision.

This argument notwithstanding, is TDCJ's policy of "delaying" release legal? This question was answered, in part, in 2008, when the Court was confronted with how mandatory supervision issues are resolved when a prisoner is serving consecutive sentences. *See Ex parte Forward*, 258 S.W.3d 151 (Tex. Crim. App. 2008), and *Ex parte Williams*, 257 S.W.3d 711 (Tex. Crim. App. 2008). In these cases, the applicants were serving sentences for pre-1987 offenses consecutively with sentences for post-1987 offenses. An underlying issue was the same as the present case—TDCJ was not releasing (or delaying release) on a mandatory supervision sentence until the applicant became eligible for release on all the sentences. While these cases concerned consecutive rather than concurrent sentences, this Court, in examining whether an inmate should be on regular mandatory supervision release on one sentence while remaining in prison on another consecutive sentence, noted:

> Because we have determined that applicant is eligible for mandatory supervision release on the instant murder sentence, we grant relief as to that conviction. TDCJ is ordered to classify applicant as eligible for mandatory supervision release on this twenty-five-year sentence for his murder conviction. However, TDCJ shall calculate his time for [his consecutive DMS] sentence and the sentences ordered to be served consecutively therewith in accordance with our holdings in *Forward*.

*Ex parte Williams*, 257 S.W.3d at 712.

This is consistent with what TDCJ is doing in Applicant's case—because Applicant's second sentence is ineligible for MS, TDCJ is delaying MS release on the first sentence until the entire period of the second sentence has passed.

In accordance with *Forward* and *Williams*, Applicant's 1997 conviction is the holding offense for Applicant. Applicant became eligible for MS release in his 1997 conviction on May 5, 2020. However, TDCJ is not releasing Applicant to mandatory supervision in his 1997 conviction until Applicant is released to DMS on his concurrent conviction. By denying Applicant release on his mandatory-supervision-eligible holding offense, Applicant has been punished for the 1997 conviction longer than the law at the time permitted.

Therefore, Applicant is entitled to immediate release in his 1997 conviction. This will be a "paper parole"—a designation by TDCJ that Applicant is on mandatory supervision release on one of his convictions—but is not an actual, physical release of Applicant from TDCJ custody. We recognize that this is somewhat of a hollow victory for Applicant considering he will be released on paper on one conviction while still being held in prison on another conviction. *See Ex parte Kuester*, 21 S.W.3d 264, 272–73 (Tex. Crim. App. 2000) (noting that, when a prisoner with two consecutive sentences makes parole on one sentence, it ceases to operate for stacking purposes; though "the inmate is in custody serving his second sentence, he is 'paroled' on his first sentence, continuing to get credit on it for the time he is in prison.").

We also recognize that a paper release may become a detriment, should an inmate be released on a second sentence, have his supervision revoked, and likely forfeit "street time" from his paper release on the first sentence for time spent in prison. Nonetheless,

Applicant's statutory right in release supersedes any potential hypothetical loss in time credit.

## IV. CONCLUSION

In Applicant's case, TDCJ is not releasing Applicant to mandatory supervision until he is "eligible for release" on all his sentences. This is an incorrect interpretation of the amendment to the MS statute. TDCJ is ordered to immediately release Applicant to mandatory supervision on this thirty-five-year sentence for burglary of a habitation with intent to commit theft. However, TDCJ shall continue to calculate his time for this sentence and the sentences ordered to be served concurrently therewith in accordance with our holdings in *Forward.* Copies of this opinion shall be sent to TDCJ's State Classification Committee—Correctional Institutions Division and its Pardons and Parole Division.


Delivered: May 18, 2022

PUBLISH