COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-04-390-CR

 

 

MIRCEA VOLOSEN                                                               APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM CRIMINAL
DISTRICT COURT NO. 3 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

ON APPELLANT=S PETITION FOR
DISCRETIONARY REVIEW

 

                                              ------------








Pursuant to Texas Rule of Appellate Procedure 50,
we withdraw our August 16, 2007 opinion and judgment and substitute the
following.  See Tex. R. App. P. 50. 
We write to address appellant Mircea Volosen=s claim
on petition for discretionary review that in our opinion on remand we failed to
address an argument he made under his first issue, that being whether the
evidence is legally sufficient to support his conviction in light of facts
establishing a defense to prosecution under former penal code section
42.09(e).  See Act of May 21,
2001, 77th Leg., R.S., ch. 450, ' 1,
sec. 42.09(a)(5), 2001 Tex. Gen. Laws 887 (amended 2007) (current version at Tex. Penal Code Ann. '
42.092(b)(2) (Vernon Supp. 2007)); Act of Aug. 26, 1991, 72d Leg., R.S., ch.
78, ' 1,
sec. 42.11(e), 1991 Tex. Gen. Laws 649 (amended 2007) (current version at Tex. Penal Code Ann. '
42.092(e)(1) (Vernon Supp. 2007)).

I.  Factual Background[2]








Kevin Ball and his family owned a miniature
dachshund named Ginger. Volosen, a veterinarian, lived directly behind Ball and
kept chickens in a pen in his backyard. 
On the morning of July 4, 2003, Ball and his friend, Robert Johnson,
were in Ball=s driveway preparing for a
cookout.  Ball noticed that GingerCwho had
been with them in his driveway minutes beforeCwas
missing. He heard Volosen=s chickens clucking and Asaw the
chickens flutter across [the pen] from one corner to the other.@[3]  Ball Afigured
the dog was over there playing,@ and he
looked over the fence and saw Ginger inside the pen with the chickens.  He called for Ginger to come to him, and
Ginger stopped Alike, oh, no, I=m in
trouble.@  Volosen, who had been out in his yard,
entered the chicken pen carrying a maulCa tool
used to split logsCand Ball said, AHey,
sorry, she got out again.@ 
Volosen looked at Ball and then struck the dog with the maul, killing
it.

Johnson called the police, and Officer Roy Kevin
Walling was dispatched to the scene. 
Volosen first told Officer Walling that Ball=s dog
was killing rabbits on his property, but when the officer asked if Volosen
could show him any dead rabbits, Volosen said that the dog was chasing
chickens, not rabbits. When Officer Walling asked if Volosen could show him any
dead chickens, Volosen took him to his backyard and pointed to a small shallow
hole in the ground that was not big enough for a stapler.  Volosen said that a dead chicken had been
lying there and that the dog must have carried it off, but Officer Walling said
that was impossible because the dog died in Volosen=s
yard.  The officer then arrested Volosen
because he failed to produce a dead animal.[4]








At trial, Ball testified that Ginger had gone on
Volosen=s
property twice a few months before July 4. 
On one of those prior occasions, Volosen told Ball to get Ginger off his
property, and as Ball was retrieving his dog, he saw a dead rabbit in an
elevated cage inside the chicken pen. 
Volosen told Ball that Ginger had killed the rabbit.  Volosen=s wife
testified about the three incidents.  She
testified that her husband told her the following:  after the first incident, a rabbit died
because Ball=s dog had attacked it; after the
second incident, three chickens died because Ball=s dog
had attacked them; and after the July 4 incident, four chickens died as a
result of the trauma and stress they suffered. 
Mrs. Volosen admitted that she never personally saw a dog attack any
rabbits or chickens on her property.  Dr.
Liviu Pogan, a veterinarian with a specialization in poultry pathology,
testified that female chickens can die from peritonitis, an infection of the
abdomen caused by eggs falling into the abdominal cavity.  Dr. Pogan testified that peritonitis can
occur from trauma and that the injury may not be visible for several days.

II.  Defense Under Former Penal Code Section
42.09(e)

In a portion of his first issue challenging the
legal sufficiency of the evidence, Volosen contends that the evidence is
legally insufficient to support his conviction for cruelty to animals because
he established a defense under former penal code section 42.09(e).  At the time of Volosen=s
indictment and trial, that section provided:

It is a defense to
prosecution under Subsection (a)(5) that the animal was discovered on the
person=s property in the act of
or immediately after injuring or killing the person=s goats, sheep, cattle,
horses, swine, or poultry and that the person killed or injured the animal at
the time of this discovery.

 








Act of Aug. 26, 1991, 72d Leg., R.S., ch. 78, ' 1,
sec. 42.11(e), 1991 Tex. Gen. Laws 649 (amended 2007).  Because killing an animal under the
circumstances set forth in former section 42.09(e) is a defense to prosecution
rather than an affirmative defense, the defendant has the initial burden to
produce evidence raising the defense.  Id.;
Tex. Penal Code Ann. ' 2.03(a)
(Vernon 2003); Zuliani v. State, 97 S.W.3d 589, 594 (Tex. Crim. App.
2003) (explaining the burdens involved in a defense under penal code section
2.03); Resendez v. State, 160 S.W.3d 181, 188 (Tex. App.CCorpus
Christi 2005, no pet.) (same).  Once the
defendant produces some evidence that supports the particular defense, the
State then bears the burden of persuasion to disprove the raised defense.  Zuliani, 97 S.W.3d at 594 (citing Saxton
v. State, 804 S.W.2d 910, 913-14 (Tex. Crim. App. 1991)).  This burden of persuasion is not one that
requires the production of evidence; rather, it requires only that the State
prove its case beyond a reasonable doubt. 
Id.  








In determining whether the evidence is legally
sufficient to support a defendant=s
conviction when the defendant has successfully presented evidence of a defense
to prosecution, we look not to whether the State presented evidence which
refuted the defense, but rather we determine whether after viewing all the
evidence in the light most favorable to the prosecution, any rational trier of
fact (1) could have found the essential elements of the offense beyond a
reasonable doubt and (2) could have found against the defendant on his
defensive issue beyond a reasonable doubt. 
Saxton, 804 S.W.2d at 914 (citing Jackson v. Virginia, 443
U.S. 307, 99 S. Ct. 2781 (1979)).

For purposes of our analysis, we will first
examine whether a rational trier of fact here could have found against Volosen
on his defense beyond a reasonable doubt. 
See id.  Looking to the
plain language of former penal code section 42.09(e), Volosen possesses a
defense to his prosecution for cruelty to animals if he killed the dog when he
discovered it on his property in the act of injuring his poultry.  See Act of Aug. 26, 1991, 72d Leg.,
R.S., ch. 78, ' 1, sec. 42.11(e), 1991
Tex. Gen. Laws 649 (amended 2007).  The
State contends that when the dog was killed it had not yet succeeded in Ainjuring
or killing@ any of Volosen=s
chickens (i.e., there were no feathers in Ginger=s
mouth), and it was not Ain the act of@
injuring or killing because it had heard its owner call its name and had taken
a step or two towards its own yard. 
Thus, the State contends that Volosen failed to establish the
applicability of this defense. 








Giving former section 42.09(e) its plain meaning,[5]
we cannot agree with the State=s
contention that it requires some completed injury to one of Volosen=s  chickens; the statute provides a defense if
the animalChere a dogCis
killed by the landowner while the animal is in the act of injuring the
landowner=s poultry.  See Act of Aug. 26, 1991, 72d Leg.,
R.S., ch. 78, ' 1, sec. 42.11(e), 1991
Tex. Gen. Laws 649 (amended 2007).  By
running to Volosen=s property, entering the
enclosed chicken pen, and chasing Volosen=s
chickens, the dog was in the act of injuring the chickens even if it had not
yet succeeded.  Based on the verb tense
of the words used by the Legislature in former penal code section 42.09(e)CAin the
act of . . . injuring or killing@Cwe
cannot rewrite the statutory defense to superimpose a requirement that the
landowner must wait for the trespassing animal to actually have injured
or killed the landowner=s
livestock by placing its claws or teeth on the livestock.  See Tex.
Gov=t Code Ann. ' 311.011
(Vernon 2005).  The State=s
construction would require a landowner to sit and watch a trespassing animal
enter the landowner=s livestock pen, chase the
landowner=s livestock, but nonetheless
refrain from killing the trespassing animal until it actually successfully sunk
its claws or teeth into the livestock; only then could the landowner kill the
trespassing animal.  The plain language
of the statute does not support this construction, and furthermore, the
Legislature could not have possibly intended the consequence of the construction
propounded by the State.








Nor can we agree with the State=s
contention that former section 42.09(e)=s Ain the
act of@
language must be interpreted to nullify the defense if the trespassing animal
momentarily pauses in its efforts to injure the landowner=s
livestock.  By virtue of entering the
enclosed chicken pen and having been chasing Volosen=s
chickens seconds before it was killed, the dog was Ain the
act of@
injuring Volosen=s poultry.  To hold otherwise would lead to an absurd
consequence that the Legislature could not possibly have intended; the
trespassing animal could, on a second-by-second basis, trigger and nullify
former section 42.09(e)=s defense simply by pausing and
resuming its efforts to injure a landowner=s
livestock.  If the trespassing animal
paused its chasing activities to gaze at the moon, the landowner could not kill
it at that momentCthe animal would no longer be Ain the
act of@
injuring, according to the State.  But
once the trespassing animal resumed the chase, former section 42.09(e)=s
defense would again apply if the landowner killed the animal.  If the trespassing animal paused its efforts
to catch the goats, sheep, cattle, swine, or poultry because it heard an owl
hoot and then took two steps toward the owl, the landowner could not kill it at
that momentCthe animal would no longer be Ain the
act of@
injuring the livestock.  But, again, once
the trespassing animal resumed its efforts to capture the livestock, former
section 42.09(e) would provide a defense to a landowner who killed the
trespassing animal.  The plain language
of the defense does not comport with the State=s
proposed interpretation, and furthermore, the Legislature could not have possibly
intended the consequence of the construction propounded by the State.








Additionally, the application of the State=s
interpretation of the defense set forth in former section 42.09(e)Cthat the
dog was no longer Ain the act of@
injuring Volosen=s chickens because it had heard
its name called and had taken a couple of steps inside the pen toward Ball=s yardCasks us
to interpret the dog=s decision-making process; that
is, we must conclude that the dog had decided not to chase the chickens anymore
and was therefore no longer Ain the
act of@
injuring them.  The trespassing dog here
was Ain the
act of@
injuring Volosen=s chickens just as a trespassing
dog who pauses its chasing activities to gaze at the moon or listen to an owl
hoot while inside a livestock pen is still Ain the
act of@
injuring livestock.  We cannot interpret
the dog=s action
in looking up and stepping toward its yard as a decision to cease being Ain the
act of@
injuring Volosen=s chickens.

Finally, despite exhaustive research, we have not
locatedCand the
State has not citedCany case in the history of Texas
jurisprudence in which a defense to prosecution did not exist for a landowner
who killed a dog that had entered the landowner=s land,
had entered the landowner=s livestock pen, had been
chasing the landowner=s livestock only seconds before
it was killed, and was killed inside the livestock pen.  But see, e.g., Wells v. Burns, 480
S.W.2d 31 (Tex. Civ. App.CEl Paso 1972, no writ)
(upholding judgment for landowner against owner of sheep-killing dogs, which
were killed by landowner, for damages caused by dogs); Wengenroth v. Agold,
27 S.W.2d 294 (Tex. Civ. App.CSan
Antonio 1930, no writ) (upholding judgment for landowner against owner of
sheep-killing dogs for damages caused by dogs). 








The evidence here is undisputed:  the dog traveled approximately 100 to 150
feet to enter Volosen=s property on July 4, 2003;
after entering Volosen=s property, the dog entered
Volosen=s
enclosed chicken pen; Volosen=s
chickens were squawking and flying from one side of the pen to the other to
avoid the dog as it chased them in the pen; Volosen obtained a maul and entered
the pen; Ball called the dog=s name,
and it stopped running and looked up; the dog took a couple of steps back
toward its yard; and Volosen then struck the dog with the maul, killing it
inside the chicken pen.  We hold that no
reasonable finder of fact could have found against Volosen on his defense under
former penal code section 42.09(e) beyond a reasonable doubt.  See Saxton, 804 S.W.2d at 914 (citing Jackson,
443 U.S. at 319, 99 S. Ct. at 2789).








In analyzing whether a rational trier of fact
could have found the essential elements of the offense beyond a reasonable
doubt, we first examine the elements the State was required to prove.  Here, the State was required to prove that Volosen
intentionally or knowingly killed a dog belonging to another without legal
authority or the owner=s effective consent.  See Act of Aug. 26, 1991, 72d Leg.,
R.S., ch. 78, ' 1, sec. 42.11(e), 1991
Tex. Gen. Laws 649 (amended 2007). 
Because we have held that no reasonable fact-finder could have found
against Volosen on his defense, we likewise hold that no reasonable finder of
fact could have found the elements of the offense beyond a reasonable doubt;
that is, no reasonable finder of fact could have found that Volosen acted
without legal authority pursuant to the defense set forth in former section
42.09(e). See Saxton, 804 S.W.2d at 914 (citing Jackson, 443 U.S.
at 319, 99 S. Ct. at 2789). We sustain Volosen=s first
issue challenging the legal sufficiency of the evidence to support his
conviction.

 

 

III.  Conclusion

Having sustained Volosen=s first
issue, we reverse the trial court=s
judgment and render a judgment of acquittal.

 

 

SUE
WALKER

JUSTICE

 

PANEL B:   DAUPHINOT, WALKER, and MCCOY, JJ.

 

DO NOT PUBLISH

Tex.
R. App. P.
47.2(b)

 

DELIVERED:
November 9, 2007











[1]See Tex. R. App. P. 47.4.





[2]We adopt our factual
recitations from our February 16, 2006 opinion. 
We note that the trial court in this case made findings of fact and
conclusions of law; but in a criminal case tried by the court without a jury, as
here, the court is not authorized to file findings of fact and conclusions of
law.  See Mattias v. State, 731
S.W.2d 936, 939 (Tex. Crim. App. 1987) (citing Morris v. State, 73 Tex.
Cr. R. 67, 163 S.W. 709 (1914)). 
Moreover, we are not to rely on such unauthorized findings or
conclusions in testing the sufficiency of the evidence. Id. at 940-41.





[3]The photographs
introduced into evidence, as well as Ball=s testimony, establish that the dog traveled some
100 to 150 feet to reach Volosen=s property, exited Ball=s fence, and somehow
entered through the chicken wire enclosing Volosen=s chicken pen. 





[4]However, Officer Walling
testified at trial that the law does not require a dead animal in order to
justify the killing of a dog.  





[5]In construing this
statutory provision, we look to the plain meaning of its language unless the
language is ambiguous or would lead to absurd consequences that the Legislature
could not possibly have intended.  See
Ex parte Noyola, 215 S.W.3d 862, 866 (Tex. Crim. App. 2007); Ex parte
Spann, 132 S.W.3d 390, 393 (Tex. Crim. App. 2004); see also Tex. Gov=t
Code Ann. ' 311.011 (Vernon
2005).