Mircea Volosen v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-390-CR

MIRCEA VOLOSEN APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)
ON APPELLANT’S PETITION FOR DISCRETIONARY REVIEW

------------

Pursuant to Texas Rule of Appellate Procedure 50, we withdraw our August 16, 2007 opinion and judgment and substitute the following.
  
See
 Tex. R. App. P
. 50.  We write to address appellant Mircea Volosen’s claim on petition for discretionary review that in our opinion on remand we failed to address an argument he made under his first issue, that being whether the evidence is legally sufficient to support his conviction in light of facts establishing a defense to prosecution under former penal code section 42.09(e).  
See
 Act of May 21, 2001, 77th Leg., R.S., ch. 450, § 1, sec. 42.09(a)(5), 2001 Tex. Gen. Laws 887 (amended 2007) (current version at 
Tex. Penal Code Ann.
 § 42.092(b)(2) (Vernon Supp. 2007)); Act of Aug. 26, 1991, 72d Leg., R.S., ch. 78, § 1, sec. 42.11(e), 1991 Tex. Gen. Laws 649 (amended 2007) (current version at 
Tex. Penal Code Ann.
 § 42.092(e)(1) (Vernon Supp. 2007)).

I.  Factual Background
(footnote: 2)
 Kevin Ball and his family owned a miniature dachshund named Ginger. Volosen, a veterinarian, lived directly behind Ball and kept chickens in a pen in his backyard.  On the morning of July 4, 2003, Ball and his friend, Robert Johnson, were in Ball’s driveway preparing for a cookout.  Ball noticed that Ginger—who had been with them in his driveway minutes before—was missing. He heard Volosen’s chickens clucking and “saw the chickens flutter across [the pen] from one corner to the other.”
(footnote: 3)  Ball “figured the dog was over there playing,” and he looked over the fence and saw Ginger inside the pen with the chickens.  He called for Ginger to come to him, and Ginger stopped “like, oh, no, I’m in trouble.”  Volosen, who had been out in his yard, entered the chicken pen carrying a maul—a tool used to split logs—and Ball said, “Hey, sorry, she got out again.”  Volosen looked at Ball and then struck the dog with the maul, killing it.

Johnson called the police, and Officer Roy Kevin Walling was dispatched to the scene.  Volosen first told Officer Walling that Ball’s dog was killing rabbits on his property, but when the officer asked if Volosen could show him any dead rabbits, Volosen said that the dog was chasing chickens, not rabbits. When Officer Walling asked if Volosen could show him any dead chickens, Volosen took him to his backyard and pointed to a small shallow hole in the ground that was not big enough for a stapler.  Volosen said that a dead chicken had been lying there and that the dog must have carried it off, but Officer Walling said that was impossible because the dog died in Volosen’s yard.  The officer then arrested Volosen because he failed to produce a dead animal.
(footnote: 4)
 At trial, Ball testified that Ginger had gone on Volosen’s property twice a few months before July 4.  On one of those prior occasions, Volosen told Ball to get Ginger off his property, and as Ball was retrieving his dog, he saw a dead rabbit in an elevated cage inside the chicken pen.  Volosen told Ball that Ginger had killed the rabbit.  Volosen’s wife testified about the three incidents.  She testified that her husband told her the following:  after the first incident, a rabbit died because Ball’s dog had attacked it; after the second incident, three chickens died because Ball’s dog had attacked them; and after the July 4
 incident, four chickens died as a result of the trauma and stress they suffered.  Mrs. Volosen admitted that she never personally saw a dog attack any rabbits or chickens on her property.  Dr. Liviu Pogan, a veterinarian with a specialization in poultry pathology, testified that female chickens can die from peritonitis, an infection of the abdomen caused by eggs falling into the abdominal cavity.  Dr. Pogan testified that peritonitis can occur from trauma and that the injury may not be visible for several days.

II.  Defense Under Former Penal Code Section
 42.09(e)

In a portion of his first issue challenging the legal sufficiency of the evidence, Volosen contends that the evidence is legally insufficient to support his conviction for cruelty to animals because he established a defense under former penal code section 42.09(e).  At the time of Volosen’s indictment and trial, that section provided:

It is a defense to prosecution under Subsection (a)(5) that the animal was discovered on the person’s property in the act of or immediately after injuring or killing the person’s goats, sheep, cattle, horses, swine, or poultry and that the person killed or injured the animal at the time of this discovery.

Act of Aug. 26, 1991, 72d Leg., R.S., ch. 78, § 1, sec. 42.11(e), 1991 Tex. Gen. Laws 649 (amended 2007). 
 Because killing an animal under the circumstances set forth in former section 42.09(e) is a defense to prosecution rather than an affirmative defense, the defendant has the initial burden to produce evidence raising the defense.  
Id.
; 
Tex. Penal Code Ann.
 § 2.03(a) (Vernon 2003)
; 
Zuliani v. State
, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003) (explaining the burdens involved in a defense under penal code section 2.03); 
Resendez v. State
, 160 S.W.3d 181, 188 (Tex. App.—Corpus Christi 2005, no pet.) (same).  Once the defendant produces some evidence that supports the particular defense, the State then bears the burden of persuasion to disprove the raised defense.  
Zuliani
, 97 S.W.3d at 594 (citing 
Saxton v. State
, 804 S.W.2d 910, 913-14 (Tex. Crim. App. 1991)).  This burden of persuasion is not one that requires the production of evidence; rather, it requires only that the State prove its case beyond a reasonable doubt.  
Id.
  

In determining whether the evidence is legally sufficient to support a defendant’s conviction when the defendant has successfully presented evidence of a defense to prosecution, we look not to whether the State presented evidence which refuted the defense, but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact (1) could have found the essential elements of the offense beyond a reasonable doubt and (2) could have found against the defendant on his defensive issue beyond a reasonable doubt.  
Saxton
, 804 S.W.2d at 914 (citing 
Jackson v. Virginia
, 443 U.S. 307, 99 S. Ct. 2781 (1979)).

For purposes of our analysis, we will first examine whether a rational trier of fact here could have found against Volosen on his defense beyond a reasonable doubt.  
See id. 
 Looking to the plain language of former penal code section 42.09(e), Volosen possesses a defense to his prosecution for cruelty to animals if he killed the dog when he discovered it on his property in the act of injuring his poultry.  
See
 
Act of Aug. 26, 1991, 72d Leg., R.S., ch. 78, § 1, sec. 42.11(e), 1991 Tex. Gen. Laws 649 (amended 2007).  
The State contends that when the dog was killed it had not yet succeeded in “injuring or killing” any of Volosen’s chickens (i.e., there were no feathers in Ginger’s mouth), and it was not “in the act of” injuring or killing because it had heard its owner call its name and had taken a step or two towards its own yard.  Thus, the State contends that Volosen failed to establish the applicability of this defense. 

Giving former section 42.09(e) its plain meaning,
(footnote: 5) we cannot agree with the State’s contention that it requires some completed injury to one of Volosen’s  chickens; the statute provides a defense if the animal—here a dog—is killed by the landowner while the animal is 
in the act of injuring 
the landowner’s poultry.  
See
 
Act of Aug. 26, 1991, 72d Leg., R.S., ch. 78, § 1, sec. 42.11(e), 1991 Tex. Gen. Laws 649 (amended 2007).  
By running to Volosen’s property, entering the enclosed chicken pen, and chasing Volosen’s chickens, the dog was in the act of injuring the chickens even if it had not yet succeeded.  Based on the verb tense of the words used by the Legislature in former penal code section 42.09(e)—“in the act of . . . injur
ing
 or kill
ing
”—we cannot rewrite the statutory defense to superimpose a requirement that the landowner must wait for the trespassing animal to actually have injur
ed
 or kill
ed
 the landowner’s livestock by placing its claws or teeth on the livestock.  
See
 
Tex. Gov’t Code Ann. 
§ 311.011 (Vernon 2005).  The State’s construction would require a landowner to sit and watch a trespassing animal enter the landowner’s livestock pen, chase the landowner’s livestock, but nonetheless refrain from killing the trespassing animal until it actually successfully sunk its claws or teeth into the livestock; only then could the landowner kill the trespassing animal.  The plain language of the statute does not support this construction, and furthermore, the Legislature could not have possibly intended the consequence of the construction propounded by the State.

Nor can we agree with the State’s contention that former section 42.09(e)’s “in the act of” language must be interpreted to nullify the defense if the trespassing animal momentarily pauses in its efforts to injure the landowner’s livestock.  By virtue of entering the enclosed chicken pen and having been chasing Volosen’s chickens seconds before it was killed, the dog was “in the act of” injuring Volosen’s poultry.  To hold otherwise would lead to an absurd consequence that the Legislature could not possibly have intended; the trespassing animal could, on a second-by-second basis, trigger and nullify former section 42.09(e)’s defense simply by pausing and resuming its efforts to injure a landowner’s livestock.  If the trespassing animal paused its chasing activities to gaze at the moon, the landowner could not kill it at that moment—the animal would no longer be “in the act of” injuring, according to the State.  But once the trespassing animal resumed the chase, former section 42.09(e)’s defense would again apply if the landowner killed the animal.  If the trespassing animal paused its efforts to catch the goats, sheep, cattle, swine, or poultry because it heard an owl hoot and then took two steps toward the owl, the landowner could not kill it at that moment—the animal would no longer be “in the act of” injuring the livestock.  But, again, once the trespassing animal resumed its efforts to capture the livestock, former section 42.09(e) would provide a defense to a landowner who killed the trespassing animal.  The plain language of the defense does not comport with the State’s proposed interpretation, and furthermore, the Legislature could not have possibly intended the consequence of the construction propounded by the State.

Additionally, the application of the State’s interpretation of the defense set forth in former section 42.09(e)—that the dog was no longer “in the act of” injuring Volosen’s chickens because it had heard its name called and had taken a couple of steps inside the pen toward Ball’s yard—asks us to interpret the dog’s decision-making process; that is, we must conclude that the dog had decided not to chase the chickens anymore and was therefore no longer “in the act of” injuring them.  The trespassing dog here was “in the act of” injuring Volosen’s chickens just as a trespassing dog who pauses its chasing activities to gaze at the moon or listen to an owl hoot while inside a livestock pen is still “in the act of” injuring livestock.  We cannot interpret the dog’s action in looking up and stepping toward its yard as a decision to cease being “in the act of” injuring Volosen’s chickens.

Finally, despite exhaustive research, we have not located—and the State has not cited—any case in the history of Texas jurisprudence in which a defense to prosecution did not exist for a landowner who killed a dog that had entered the landowner’s land, had entered the landowner’s livestock pen, had been chasing the landowner’s livestock only seconds before it was killed, and was killed inside the livestock pen.  
But see, e.g., Wells v. Burns
, 480 S.W.2d 31 (Tex. Civ. App.—El Paso 1972, no writ) (upholding judgment for landowner against owner of sheep-killing dogs, which were killed by landowner, for damages caused by dogs); 
Wengenroth v. Agold
, 27 S.W.2d 294 (Tex. Civ. App.—San Antonio 1930, no writ) (upholding judgment for landowner against owner of sheep-killing dogs for damages caused by dogs). 

The evidence here is undisputed:  the dog traveled approximately 100 to 150 feet to enter Volosen’s property on July 4, 2003; after entering Volosen’s property, the dog entered Volosen’s enclosed chicken pen; Volosen’s chickens were squawking and flying from one side of the pen to the other to avoid the dog as it chased them in the pen; Volosen obtained a maul and entered the pen; Ball called the dog’s name, and it stopped running and looked up; the dog took a couple of steps back toward its yard; and Volosen then struck the dog with the maul, killing it inside the chicken pen.  We hold that no reasonable finder of fact could have found against Volosen on his defense under former penal code section 42.09(e) beyond a reasonable doubt.  
See Saxton
, 804 S.W.2d at 914 (citing 
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789).

In analyzing whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt, we first examine the elements the State was required to prove.  Here, the State was required to prove that Volosen intentionally or knowingly killed a dog belonging to another without legal authority or the owner’s effective consent.  
See
 
Act of Aug. 26, 1991, 72d Leg., R.S., ch. 78, § 1, sec. 42.11(e), 1991 Tex. Gen. Laws 649 (amended 2007)
.
  Because we have held that no reasonable fact-finder could have found against Volosen on his defense, we likewise hold that no reasonable finder of fact could have found the elements of the offense beyond a reasonable doubt; that is, no reasonable finder of fact could have found that Volosen acted without legal authority pursuant to the defense set forth in former section 42.09(e). 
See Saxton
, 804 S.W.2d at 914 (citing 
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789)
. We sustain Volosen’s first issue challenging the legal sufficiency of the evidence to support his conviction.

III.  Conclusion

Having sustained Volosen’s first issue, we reverse the trial court’s judgment and render a judgment of acquittal.

SUE WALKER

JUSTICE

PANEL B: DAUPHINOT, WALKER, and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: November 9, 2007

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
We adopt our factual recitations from our February 16, 2006 opinion.  We note that the trial court in this case made findings of fact and conclusions of law; but in a criminal case tried by the court without a jury, as here, the court is not authorized to file findings of fact and conclusions of law.  
See Mattias v. State
, 731 S.W.2d 936, 939 (Tex. Crim. App. 1987) (citing 
Morris v. State
, 73 Tex. Cr. R. 67, 163 S.W. 709 (1914)).  Moreover, we are not to rely on such unauthorized findings or conclusions in testing the sufficiency of the evidence. 
Id.
 at 940-41.

3:
The photographs introduced into evidence, as well as Ball’s testimony, establish that the dog traveled some 100 to 150 feet to reach Volosen’s property, exited Ball’s fence, and somehow entered through the chicken wire enclosing Volosen’s chicken pen. 

4:
However, Officer Walling testified at trial that the law does not require a dead animal in order to justify the killing of a dog.  

5:
In construing this statutory provision, we look to the plain meaning of its language unless the language is ambiguous or would lead to absurd consequences that the Legislature could not possibly have intended. 
 See Ex parte Noyola
, 215 S.W.3d 862, 866 (Tex. Crim. App. 2007); 
Ex parte Spann
, 132 S.W.3d 390, 393 (Tex. Crim. App. 2004); 
see also 
Tex. Gov’t Code Ann. 
§ 311.011 (Vernon 2005).